**PULASKI HIGHWAY EXPRESS, INC., and Maremont Corporation, Plaintiffs-Appellants,**

v.

**TERMINAL TRANSPORT COMPANY, INC., Defendant-Appellee.**

Court of Appeals of Tennessee, Middle Section.

Dec. 1, 1972.

Certiorari Denied by Supreme Court April 2, 1973.

Callicott, Marshall & Havron, Nashville, for plaintiffs-appellants.

Stewart & Black, Nashville, for defendant-appellee.

## OPINION

TODD, Judge.

This is a dispute between connecting motor carriers as to which should bear the loss from injury to a shipment in transit. The Trial Judge directed a verdict for the defendant, Terminal Transport Company, Inc., (hereafter called Terminal) and the plaintiff, Pulaski Highway Express, Inc., (hereafter called Pulaski) has appealed.

The sole assignment of error complains of said directed verdict dismissing the suit of Pulaski.

The damaged shipment was a large welding machine which belonged to the Maremont Corporation and was shipped from the Maremont plant in Illinois to the Maremont plant in Tennessee. It is uncontroverted that the shipment was received "in apparent good order" by Terminal who delivered it to Pulaski in Nashville and that Pulaski transported the shipment to destination where it was found to be damaged to the extent of $4,600.00.

It is also uncontroverted that Pulaski paid to Maremont the said sum of $4,600.-00 and that Maremont assigned to Pulaski its claim for damage to said shipment.

The one disputed issue of fact is the condition of the shipment at the time Terminal delivered it to Pulaski.

This suit is based upon the United States Interstate Commerce Act, (Title 49, U.S. C.) pertinent portions of which are as follows:

> "§ 20, par. (11). *Liability of initial and delivering carrier for loss; limitation of liability; notice and filing of claim.* Any common carrier, . . . receiving property for transportation . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, . . . over whose line or lines such property may pass . . . when transported on a through bill of lading, . . . *any such common carrier, . . . so receiving* property for transportation . . . *or* any common carrier, . . . *delivering said property* so re-

ceived and transported *shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon,* whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, . . . to which such property may be delivered or over whose line or lines such property may pass . . . (emphasis supplied)

.    .    .    .    .    .

"§ 20, par. (12). *Recovery by initial or delivering carrier from connecting carrier.* The common carrier, railroad, or transportation company issuing. such receipt or bill of lading, or delivering such property so received and transported, shall be entitled to recover .from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof, and the amount of any expense reasonably incurred by it in defending any action at law brought by the owners of such property."

The declaration of Pulaski is in two counts. In the first count, Pulaski alleges that, as delivering carrier, it paid $4,600.00 damages to the owner of the shipment and is entitled to reimbursement from Terminal because the damage occurred while the shipment was in the possession of Terminal, as provided by 49 U.S.C. § 20(12) supra.

In the second count of the declaration, Pulaski seeks to enforce the rights of Maremont to recover from the initial carrier, Terminal, regardless of the carrier on whose lines the damage occurred as provided by 49 U.S.C. § 20(11) supra.

The contentions of Pulaski will be considered as they relate to the two counts of the declaration, but in reverse order.

Under the second count, Pulaski insists that it stands in the shoes of Maremont and thereby has the same right as Maremont to demand and receive settlement for damages in transitu from the initial carrier, Terminal, regardless of whether or not the shipment was damaged while in the possession of Terminal.

It is, of course, conceded that, if Maremont had chosen to do so, it might have proceeded against Terminal as the initial carrier and collected its damage from Terminal upon a simple showing that damage occurred between shipment and delivery. Defendant insists, however, that Pulaski, as assignee, is not entitled to the same liberality of remedy.

Pulaski insists and cites authority for the proposition that the right of action of Maremont was assignable, hence the assignment to Pulaski conveyed all of the rights of Maremont, including the right to collect damages from Terminal by a mere showing of damage in transitu without showing that the damage occurred while the shipment was in the possession of Terminal.

Pulaski cites Carne v. Maryland Casualty Co., 208 Tenn. 403, 346 S.W.2d 259 (1961) wherein the Supreme Court held that an action against a liability insurer for bad faith in failing to settle within policy limits was an action ex delicto and did not survive the death of the insured.

In Haymes v. Halliday, 151 Tenn. 115, 268 S.W. 130 (1924), cited by appellant, the Supreme Court held that rights of action for damages to real estate were not assignable at common law, but are made such by the survival statutes.

In Railroad v. Henderson, 69 Tenn. (1 Lea) 1 (1878), cited by Pulaski, the Supreme Court held that a right of action for tort to personal property may be assigned.

None of the cited authorities directly supports the proposition that the peculiar and special *remedy* of the owner of a ship-

ment, conferred by federal statute, is assignable.

■ It is beyond serious question that a shipper may assign his rights in a shipment (as by transfer of bill of lading); but there is serious question as to the power of the holder of a bill of lading to assign *part of his rights* thereunder (i. e., his claim for damages), thereby to vest the assignee with the rights conferred by statute only upon "the lawful holder of said receipt or bill of lading or any party entitled to recover thereon."

It is to be emphasized at this point that Maremont did not assign the bill of lading to Pulaski. By said assignment Maremont assigned to Pulaski:

". . . all of its right, title and interest in and to any claim for damages which it has or might have against any other carrier as the result of said shipment . . .."

Furthermore, the declaration of Pulaski does not represent that it is the lawful holder of the bill of lading or that it is a party entitled to recover thereon (upon the bill of lading).

In the annotation in U.S.C.A. at Title 49 § 20(11), note 8 cites a number of decisions relating to the definition of "lawful holder." The substance of said decisions is that beneficial interest in the shipment itself is the criterion for determining the right to claim the special benefits of the statute. Authority is found for including a successor corporation to the shipper, Kayser-Roth Corp. v. Arrow Carrier Corp., 25 Misc.2d 768, 207 N.Y.S.2d 748 (1960), and an insurance company which had paid damages and claimed subrogation under the terms of its policy.

Diligent research has not disclosed any authority for the plan devised by Pulaski to discharge its obligation to the owner of the shipment while attempting to acquire all of the statutory rights of the owner against the remaining carrier. There are goods reasons why this plan should not be enforced.

■ In the first place, the federal statute, quoted supra, provides for the respective rights and liabilities of the owner of the shipment and the various carriers. Any attempt to circumvent, alter or subvert such statutory arrangement should not be favored.

■ Secondly, Pulaski has paid to Maremont the exact amount of the unquestioned liability of Terminal and Pulaski to Maremont. By its declaration, Pulaski asserts unequivocally that Maremont was/is justly entitled to $4,600.00 for damage to its shipment. Therefore, the amount which Pulaski paid Maremont was the exact amount which Pulaski owed Maremont without the necessity of any assignment, and the assignment could be said to be without lawful consideration.

Thirdly, the plan of taking an assignment of a claim against the assignee and others promotes an undesirable circuity of action. That is, the assignment purportedly authorizes Pulaski to recover from Terminal even though the damage actually occurred on Pulaski's line; and Terminal, after suffering judgment and paying it to Pulaski, would then be authorized under the statute to sue Pulaski and recover from Pulaski the money it had paid Pulaski. In such event, Terminal would have the burden of proving that the damages occurred while the shipment was in the possession of Pulaski.

■■ Finally, the real intent of the entire plan, as suggested by the preceding paragraph, is to enable Pulaski to shift to Terminal the burden of proof as to where and when the damage actually occurred. It is insisted that Maremont was empowered to allocate the burden of proof by selecting which carrier it would force to pay its claim. This power was conferred upon Maremont by statute, and it is not conceived to be consonant with the policy of the statute to allow the transfer of such a

power to one of the affected parties, especially without consideration. That is, it seems contrary to public policy to permit a party, without payment of consideration to defeat and reverse existing procedural rules as to burden of proof.

■ So far as research discloses, the question under discussion has not been previously decided, and valid and logical reasons could be assigned for disposition of same as contended by Pulaski. However, the greater weight of logic, reason and justice favors the decision of this Court that, by taking an assignment of rights in exchange for payment of an undisputed claim, an initial or delivering carrier acquires no rights against other carriers superior to those conferred by 49 U.S.C. § 20(12) supra.

■ Therefore, the contention of Pulaski that it had no burden to prove damage on Terminal's line is respectfully rejected.

The other issue for determination is whether the Trial Judge should have submitted to the jury the question of whether or not the shipment was damaged while in the possession of Terminal. This issue, of course, is determined by whether or not there was material and substantial evidence from which the jury might have found that the damage did occur during the possession of Terminal.

There is evidence that Terminal received the shipment on June 3, 1968 in apparent good order; that, on or about June 14, 1968, Terminal tendered the shipment to Pulaski at its (Pulaski's) Nashville dock; that, on said occasion, said shipment was "on the rear of" a Terminal trailer; that Pulaski was unable to accept the shipment on that date and same was transported to and placed on Terminal's Nashville dock; that Terminal had in its possession a trailer belonging to Pulaski; that, on June 17, 1968, said Pulaski trailer was delivered to the Nashville dock of Pulaski with the subject shipment loaded and braced in position in the "nose" of the trailer where the ship-

ment could not be conveniently examined; that the said trailer was loaded with other freight and dispatched to its destination; that said trailer was not involved in any collision between Nashville and destination; that the shipment was delivered on June 18, 1968 and then found to be severely damaged.

Testimony of witnesses and pictures indicate that the damages were such as would be produced by some violent impact. There is evidence that "in June 1968" a large machine was overturned on the Nashville dock of terminal and that power lifts were required to turn it back upright.

The foregoing is the evidence most favorable to the plaintiff, Pulaski.

The defendant, Terminal, relies heavily upon the written receipt signed by an employee of Pulaski at the time the shipment was delivered to Pulaski already loaded and braced in Pulaski's own trailer. Said receipt acknowledged the shipment to be "in apparent good order," and no exceptions were noted thereon. However, there is evidence that, when the shipment was received, it was dark, there was no light on the dock or in the trailer, the shipment could not be seen very well, and that any damage on the side of the shipment against the walls of the trailer could not have been discovered without removing the bracing and moving the shipment about in the trailer.

Defendant assails the testimony as to the overturning *of a large machine* during June 1968 as being too remote and speculative to support a verdict. It is shown that the shipment was unusual in that it was large, heavy and unwieldy; that such shipments were not a daily occurrence; and that the damages were such as would result from falling or being overturned. Said circumstances contribute some probative weight to the testimony of overturning of *a large machine* during June, 1968, on the terminal dock, even though the witness could not pinpoint the day in June when the mishap occurred.

■ Any fact may be proved by direct evidence, circumstantial evidence, or by a combination of direct and circumstantial evidence. Crowe v. Provost, 52 Tenn.App. 397, 374 S.W.2d 645 (1963)

■ In a civil case depending upon circumstantial evidence, it is sufficient for the party having the burden of proof to make out the more probable hypothesis; and the evidence need not arise to that degree of certainty which will exclude every other reasonable conclusion. Hayes v. Schweikart's Upholstering Co., 55 Tenn. App. 442, 402 S.W.2d 472 (1965).

There are circumstances from which a jury might reasonably infer that the damage occurred on the line of Terminal. Even though one or more of the circumstances, standing alone, might be insufficient; the combined weight of the circumstances would support a verdict for Pulaski. Among such circumstances are the following:

(a) The length of possession: Terminal from June 3 to June 17; Pulaski from June 17 to June 18.

(b) The occasion for damage. The handling of the shipment by Terminal as it was loaded in a Terminal trailer in Illinois, removed from said trailer to Terminal's Nashville dock, and loaded by Terminal in Pulaski's trailer. Pulaski did not handle the shipment, and no untoward incident occurred as Pulaski's trailer proceeded to its destination.

(c) The fact that a large machine overturned on Terminal's dock in June, 1968 and Terminal did not undertake to show said overturned machine was not the subject machine.

(d) The unexplained manner of loading the machine in Pulaski's trailer. It would seem unnecessary for Terminal to put a heavy machine in the "nose" of a trailer and securely brace it with timbers against the wall for the short trip from Terminal's Nashville dock to Pulaski's Nashville dock.

When the shipment was first tendered on June 14, it was on the "backend" of a trailer, presumably unbraced.

■ It is characteristic of the transportation business that damages occur under circumstances wherein it is difficult or impossible to determine when, where, and how a shipment has been damaged. The cases contain references to special agreements between members of transportation associations for the apportionment of damages which cannot be allocated to a particular carrier. In cases such as the present case, wherein allocation of liability must depend upon evaluation of all circumstances, justice requires that each carrier come forward with all available facts and circumstances from which an intelligent decision can be made. When such has been done, the jury and the court will be in a position to determine liability or to determine that liability cannot be fixed because of lack of evidence.

■ Terminal relies upon its receipt for delivery to Pulaski. Such receipt is prima facie evidence of delivery in undamaged condition, but is not conclusive. The circumstances in this record are sufficient to justify a jury in finding for Pulaski in spite of said receipt.

■ Terminal urges the common law presumption that the injury occurred on the line of the delivering carrier; however, said presumption is rebuttable, and the circumstances are sufficient to overcome said presumption if the jury so decides.

In summary, the contention of Pulaski, that it has the same rights as Maremont to recover without proof of injury on the line of Terminal, is overruled. The contention of Pulaski, that the evidence in this record requires the submission of the case to a jury, is sustained.

The judgment of the Trial Court dismissing the suit of Pulaski is reversed. The cause is remanded for trial anew.

The costs of this appeal are adjudged against the appellee, Terminal Transport Company, Inc.

Reversed and remanded.

SHRIVER and PURYEAR, JJ., concur.