Louise WATKINS, Plaintiff-Appellant,

v.

**Dr. John M. RUSSELL, Jr.,
Defendant-Appellee.**

Court of Appeals of Tennessee,
Western Section.

Aug. 10, 1976.

Certiorari Denied by Supreme Court
Nov. 29, 1976.

James H. Hicks, George C. Harrison, Memphis, for plaintiff-appellant.

James F. Eggleston, Buchignani & Greener, Memphis, for defendant-appellee.

CARNEY, Presiding Judge.

Plaintiff Louise Watkins brought suit for herself and her four adult children for damages resulting from the alleged wrongful death of her husband, David Watkins. She alleged malpractice by Defendant Dr. John M. Russell, Jr. as the cause of death. The Trial Judge directed a verdict in favor of the Defendant at the conclusion of the Plaintiff's proof and the Plaintiff has appealed and assigned errors.

The Defendant had been the family physician for the deceased, David Watkins, aged 52, for a considerable period of time prior to his death on May 19, 1973. Plaintiff's proof established that the Defendant knew that David Watkins had a heart condition; that the Defendant had previously run an EKG on him; and on May 18, 1973, about 10:00 A.M. David Watkins' daughter, Elizabeth, carried him to Defendant's office for examination and treatment; the deceased was suffering from severe chest pains, pains in the left arm, and a swollen stomach; Elizabeth Watkins asked the Defendant Russell to get David Watkins into a hospital for emergency treatment; the Defendant Russell seemed unconcerned about his condition, prescribed some medicine for David Watkins and sent him home.

After reaching home and taking the medicine, David Watkins' condition grew worse; the family tried all during the day to get in touch with the Defendant Dr. Russell; finally, in the late afternoon of May 18, 1973, they talked to Dr. Russell by telephone and insisted that David Watkins was in extremis and needed to go to a hospital. Dr. Russell then gave the Plaintiff the number of Dr. Thomas Stern, a heart specialist; Dr. Stern was called and shortly thereafter David Watkins was admitted to the hospital about 5:30 P.M. May 18, 1973. Dr. Stern saw him immediately upon arrival. David Watkins died in the hospital about 10:30 A.M. on May 19, 1973.

Plaintiff relied upon the deposition of Dr. Thomas N. Stern who testified that David Watkins died as a result of a massive heart attack. Dr. Stern was asked if he felt that if David Watkins had been hospitalized by Defendant about ten or ten-thirty on the morning of May 18, 1973, his chances of overcoming the heart attack and surviving would have been better. Dr. Stern made the following reply:

"This is an extremely difficult question to answer. And my first inclination is simply to give you a flat—it probably wouldn't have made any difference when he got in. I think there is some possibility that it would have made a difference, and, yet, from his condition when I saw him, from the size of the attack, from the fact that his heart got progressively weaker, even in the hospital, on usual and extraordinary treatment, I would think it probably wouldn't have made any difference."

The Trial Judge made the following statement in granting the motion for directed verdict:

"The Court has listened to this testimony, and it comes down to a Motion for a Directed Verdict. I have the duty of taking the proof, of taking all the proof in favor of the Plaintiff, and putting aside all countervailing proof and giving the Plaintiff the benefit of all reasonable inferences, and deciding whether or not we have an issue of fact here on the question of liability, and that's a very serious duty. It's as serious, or more serious where we have a professional man involved, as to whether or not a case has been made out.

Now, I'm of the opinion in the present state of the record that Mr. Eggleston's Motion is well taken.

Now, even if I weren't of that opinion, Mr. Hicks and Mr. Harrison, as the thirteenth Juror, whatever verdict that Jury brought back for the Plaintiff, I'd never let it stand, and I'm going to tell you why.

I'm first of all holding that Mr. Eggleston's Motion is well taken because the proof does not show proximate cause for any act that the doctor did or failed to do. I want the record to be clear that that is why I'm granting the Motion, but I want it also stated here in the record, that there's no way that Doctor Russell, as an ordinary, reasonable human being, with the description that Ms. Elizabeth, bringing her father to his office, the pain he was in, the perspiration, the swollen stomach, could hardly walk, helped him back to the treatment room, giving him an EKG, staying there with him, working with him an hour or hour and a half, maybe two hours; you're going to tell me the doctor didn't tell her to get him to the hospital? No way, no way; absolutely unreasonable, unbelievable, and as a thirteenth Juror, I could never approve the verdict.

I'll grant the Motion."

 Assignment of error No. I insists that the Trial Judge was in error in granting the motion for a directed verdict and in finding that the negligence of Dr. Russell was not the proximate cause of the death of David Watkins. The substance of Dr. Stern's testimony was that if David Watkins had been hospitalized on the morning of May 18, it possibly could have improved his chances of survival but very probably would not have. The small possibility of survival admitted by Dr. Stern precludes a finding by the jury that Dr. Russell's negligence was a proximate cause of death. See *Crowe v. Provost* (1963), 52 Tenn.App. 397, 374 S.W.2d 645; *Stewart v. Crook Sanatorium* (1933), 17 Tenn.App. 589, 69 S.W.2d 259; *Pulaski Highway Express, Inc. v. Terminal Transport Co., Inc.* (1973 Tenn.App.M.S.) 493 S.W.2d 103. Assignment of error No. I is respectfully overruled.

Assignment of error No. II is that His Honor the Trial Judge erred in applying a different rule of law insofar as the Plaintiff's burden of proof is concerned because the Defendant was a professional man. The assignment of error is predicated upon the portion of the statement of the Trial Judge in granting the motion for directed verdict that it was a very serious duty on

the part of the Court to determine whether or not the motion should be granted and the further statement: It's as serious or more serious where we have a professional man involved, as to whether or not a case has been made out."

We know of no rule of law and of no cases designating suits against professional men as more serious than other suits. However, we find no reversible error in the statement by His Honor the Trial Judge. Therefore, assignment of error No. II is sustained without reversal.

Assignment of error No. III insists that the Court erred in making a statement, in substance, that he did not believe the testimony of David Watkins' daughter, Elizabeth, that Defendant Dr. Russell failed and refused to send David Watkins to a hospital after his examination on the morning of May 18 and that he, the Trial Judge, would never approve the verdict as the thirteenth juror. It was unnecessary to a decision of the motion for directed verdict for His Honor the Trial Judge to make such statement. However, we cannot hold him in error for stating his views on the evidence which he had heard. It was not before a jury. Assignment of error No. III is respectfully overruled.

Assignment of error No. IV complains of the action of the Trial Judge in sustaining Defendant's objections and striking the following question and answer from Dr. Stern's deposition:

"Q But it possibly could have?

"A There is some possibility. I can't deny a possibility. I believe that his course was determined more by the location of the blockage, which determined the degree of damage, rather than any subsequent damage."

In portions of his deposition which were admitted, Dr. Stern made the statement that because of the weakness of the heart, decedent's chance of mortality in the hospital was ninety percent or possibly ninety-five percent. Dr. Stern's entire deposition was before the Trial Judge and before this Court. No verdict of the jury is involved. We find no abuse of discretion on the part of the Trial Judge in striking the particular question and answer.

Assignment of error No. V complains of the action of the Trial Judge in sustaining the Defendant's objection to other portions of the deposition of Dr. Stern.

The Plaintiff had established in the discovery deposition of Dr. Russell that Dr. Russell had made no notation on his office records that he had run an EKG on David Watkins on April 10 and had made no notation that he had advised David Watkins that he was having a myocardial infarction and no notation that he had advised him to go to the hospital. Dr. Russell had stated that he had not completed his office notes as a result of a visit by the deceased on April 11, 1973, because he got busy with other patients. The questions and answers stricken from Dr. Stern's deposition complained of in assignment of error No. V related to Dr. Stern's testimony that if he had examined the patient for heart attack and had run an EKG and determined that the patient had myocardial infarction, he, Dr. Stern, would have made note of such facts on his records.

The stricken testimony was admissible only to show negligence. In considering the motion for directed verdict the Trial Judge was required to take Plaintiff's proof of negligence by Dr. Russell as true and discard the denial of negligence by Dr. Russell. The stricken testimony did not relate to proximate cause which was the predicate of the directed verdict. Therefore, there was no reversible error in striking the testimony. Assignment of error No. V is overruled.

All the assignments of error are respectfully overruled and the judgment of the lower Court is affirmed. The costs in the Court below and in this Court are taxed to the Plaintiff.

MATHERNE and NEARN, JJ., concur.