James A. TRUAN, Petitioner,

v.

Terry K. SMITH and Roy S.
Smith, Respondents.

Supreme Court of Tennessee.

Feb. 12, 1979.

Rehearing Denied March 19, 1979.

W. P. O'Neil, O'Neil, Parker & Williamson, Knoxville, for petitioner.

Oliver A. Smith, III, James W. Justice, Knoxville, for respondents.

## OPINION

COOPER, Justice.

This is an action by a patient and her husband against a treating physician for damages alleged to have been the result of malpractice by the physician in the examination, diagnosis and treatment of breast cancer. The trial court approved a jury verdict awarding the patient, Terry K. Smith, $150,000.00 in damages, and her husband $35,000.00, and entered judgment in accord with the verdict. The Court of Appeals, with one judge dissenting, concluded there was material evidence to support the verdict of the jury and that no prejudicial error was committed, either in the admission of evidence or in instructions to the jury, and affirmed the judgment. We granted certiorari primarily to examine the record to ascertain whether it discloses evidence of malpractice on the part of Dr. James A. Truan, which proximately caused or accelerated the death of Mrs. Smith.

In reviewing a case where the judgment is based on the jury's verdict, we do not weigh the evidence to determine the preponderance thereof, nor do we decide the credibility of witnesses. *McAmis v. Carlisle*, 42 Tenn.App. 195, 300 S.W.2d 59 (1956). Our review is limited to a determination of whether there is any material evidence to support the verdict, and "it [our review] must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." *D. M. Rose & Co. v. Snyder*, 185 Tenn. 499, 206 S.W.2d 897 (1947). If there is material evidence to support the verdict, we are required to affirm it. *City of Chattanooga v. Ballew*, 49 Tenn.App. 310, 354 S.W.2d 806 (1961), and numerous cases there cited.

Considering the evidence in this cause in the light of the above authorities, we find that Dr. Truan, who had treated members of the Smith family since 1966, became the complete family physician for the Smith family on November 13, 1973, when he accepted responsibility for Mrs. Smith's gynecological care. The initial physical examination given Mrs. Smith revealed no abnormalities or conditions worthy of comment, except the fact that Mrs. Smith had had implants inserted in her breasts in 1962 for cosmetic purposes. In January or February of 1974, Mrs. Smith noticed a change in the size and firmness of her left breast, which she attributed to the implant. Her breast continued to increase in size and firmness, and there was discoloration in the nipple area and pain on pressure. On March 25, 1974, while being examined by Dr. Truan for a stomach or colon disorder, Mrs. Smith called Dr. Truan's attention to her breast and her symptoms but received no significant response from him. Dr. Truan made no examination of the breast at that time.

Mrs. Smith testified that the changes in her breast became more noticeable with the passage of time, and that she called the changes to the attention of Dr. Truan for the second time on May 6, 1974. Dr. Truan's records show that Mrs. Smith then was complaining of discoloration in the nipple area, discomfort, numbness and sharp pain in her left breast. Dr. Truan examined the breast using the palpation method and discovered no discoloration, but did find there had been a 10 to 15 percent enlargement of the left breast since November, 1973. He found no delineated mass or lump, though the breast as a whole was larger and firmer than the other breast. Dr. Truan testified that "more material [was] palpable in the left side than in the right" but that the left breast was best described as "more like a swollen or enlarged area."

On the basis of the examination, Dr. Truan made a "differential" or "working" diagnosis that Mrs. Smith's complaints were attributable to either (1) foreign body reaction, (2) mastitis, (3) carcinoma, (4) benign tumor, or (5) fibrocystic disease. This "differential" diagnosis was not communicated to Mrs. Smith. Dr. Truan did advise Mrs. Smith to observe the left breast for 30 days for a change in symptoms and gave her an appointment for June 3, 1974. Mrs. Smith testified that Dr. Truan also stated he would consult with a plastic surgeon regarding implant behavior. No comment was made concerning the possibility of cancer.

During the 30 day observation period, Mrs. Smith noticed no change in her symptoms. On the morning of the appointment, she called Dr. Truan's office, informed the nurse that there had been no change in her symptoms since her examination by Dr. Truan and asked if she should keep the appointment. According to Mrs. Smith,

They said they would give him the message, and I was left with the assumption that if it was necessary for me to go on in somebody would call me back.

No one from Dr. Truan's office ever called Mrs. Smith.

In late June, Mrs. Smith's symptoms became more acute, the pain became more intense and a rash appeared on her left breast. She called Dr. Truan's office, found that he was out of the city at a medical convention, and was given an appointment for July 8th. In the following week, when the symptoms did not subside, Mrs. Smith made an appointment with a plastic surgeon, Dr. Knowling, for July 10th.

When Dr. Truan examined Mrs. Smith on July 8th he noted in his records that she had more swelling and tenderness in the left breast. Mrs. Smith testified that when Dr. Truan examined her, the left breast was feverish, the nipple area was noticeably darker, a rash was beginning to appear, and a slightly hard mass was present directly behind the nipple. Dr. Truan performed no tests on this examination, explaining that Mrs. Smith was to see a specialist in two days.

Dr. Knowling, on examining Mrs. Smith on July 10th, had her admitted to St. Mary's Hospital, where a mammogram revealed the mass in the breast. A biopsy was performed which confirmed that the mass was malignant. A radical mastectomy was performed by Dr. Whittington on July 18th. The cancerous mass removed from the breast was 3.5 to 4.5 centimeters in size, Microscopic analysis of Mrs. Smith's lymph nodes revealed metastasis from the primary breast cancer to 24 of the 40 lymph nodes.

Dr. Cyril H. Wecht was convinced from the size of the tumor removed on July 18, 1974, and the smallness of Mrs. Smith's breast, that the tumor was palpable in November, 1973, when Dr. Truan undertook to give Mrs. Smith a complete physical examination, in March, 1974, when Mrs. Smith called Dr. Truan's attention to changes in her breast, and certainly on May 6, 1974, when Dr. Truan first examined Mrs. Smith's breast.

Dr. Wecht and Dr. Thompson expressed the opinion the cancer had not metastasized at the time of the examination on May 6th, 1974. Dr. Wecht also expressed the opinion that having embarked on a "wait and see" program as an aid in diagnosis of changes in a patient's breast, the doctor should follow his patient.

The record further shows that following the mastectomy, Mrs. Smith was treated by radiation and chemotherapy. She also had a therapeutic hysterectomy. In addition she was hospitalized on several occasions for the removal of fluid from her lungs, and underwent a pericardiectomy to relieve pressure from the accumulation of fluid around the heart. The excess fluids resulted from the cancer.

At the time of the trial, Mrs. Smith's prognosis was poor and, in fact, she died from cancer within weeks of the conclusion of the trial.

■ A physician is under the duty to exercise reasonable and ordinary care and diligence in the exertion of his skill and the application of his knowledge, and is re-

quired to exercise his best judgment as to the treatment of the case intrusted to him. *See Blankenship v. Baptist Memorial Hospital*, 26 Tenn.App. 131, 168 S.W.2d 491 (1942). Where there is a difference of opinion among physicians as to the treatment to be given in a particular case, a physician is not guilty of malpractice if he follows the course of treatment advocated by a considerable number of physicians of good standing. *Ball v. Mallinkrodt Chemical Works*, 53 Tenn.App. 218, 381 S.W.2d 563 (1964); *McPeak v. Vanderbilt University Hospital*, 33 Tenn.App. 76, 229 S.W.2d 150 (1950); *Blankenship v. Baptist Memorial Hospital, supra.* A caveat or limitation in the application of this rule is set out in *Casenburg v. Lewis*, 163 Tenn. 163, 40 S.W.2d 1038 (1930), as follows:

> It is the physician's privilege to decide between one of two or more courses in the treatment of his patient and, as said by the Court of Appeals, he could not be held responsible for an erroneous exercise of judgment. *That rule is subject, however, to the limitation that before exercising judgment the physician should inform himself by proper examination so as to ascertain the facts and circumstances on which a reasonable exercise of judgment might rest.* (emphasis supplied)

There was a consensus among the physicians testifying that when changes in the breast of a patient are noted by a physician on examination, or are called to the physician's attention by a patient, one of several acceptable medical procedures is for the doctor to observe the patient for a period of time, variously fixed by medical witnesses at from four to eight weeks, and to predicate his later actions on what he observes. Dr. Wecht indicated that the kind and severity of symptoms relative to the breast have an impact on the need for and time to be devoted to observation of symptoms before the physician moves on to other diagnostic procedures.

There also was a consensus among the physicians that testified that the earlier cancer is treated the better the prognosis of the patient, and that the patient's chances for survival decline drastically on the metastasis of the cancer. This, of course, places a premium on early and correct diagnosis and treatment of cancer in a patient.

 Dr. Truan insists that since the procedure he followed after the May 6, 1974, examination—of instituting an observation period—was an accepted medical procedure, he cannot be guilty of malpractice and that a verdict must be directed for him. We disagree. Dr. Truan's contention makes no allowance for his actions, or lack of action, prior to May 6, 1974, nor for his failure to follow up on the observation period instituted by him on May 6th. The jury had before it testimony that the mass in Mrs. Smith's breast was of sufficient size to be palpable by a competent physician as early as November 12, 1973—and, of course, at all times thereafter—but that Dr. Truan failed to detect the mass when he examined her breast in November. In addition, there was testimony that Dr. Truan took no action on Mrs. Smith's report to him, on March 25, 1974, that she had noticed marked changes in her left breast, when, as was previously mentioned, the consensus of medical testimony was that, on learning of such changes, a physician should make some effort to determine their cause. Finally, there was medical testimony that metastasis had not occurred on May 6, 1974, and that, had the cancer been treated before that date, Mrs. Smith's chances of either remission or recovery would have materially increased. From these facts, we think the jury reasonably could conclude that, in failing to detect the breast mass when he had an opportunity to do so on both November 12, 1973, and March 25, 1974, and in failing to act on the patient's complaints on March 25, 1974, Dr. Truan did not exercise that degree of care and diligence required of him in providing medical care to Mrs. Smith, and that this lapse either materially increased the chances of or accelerated Mrs. Smith's death.

 We are also of the opinion—as was the majority of the Court of Appeals—that the jury reasonably could find that Dr. Truan was guilty of actionable negligence

in failing to follow his patient through and after the period of observation prescribed by him at the time of the May 6th examination. Dr. Truan testified he thought the condition he found on examination of Mrs. Smith "could be, probably" serious. Despite this belief, he did not inform Mrs. Smith that cancer was a possible cause of her complaints, nor did he make any effort to see that Mrs. Smith returned for evaluation at the end of the observation period. This theory was submitted to the jury, as was the issue of whether Mrs. Smith was guilty of contributory negligence in failing to keep the June 3, 1974, appointment. The jury resolved both issues in favor of Mrs. Smith and the findings, in our opinion, are supported by evidence.

Several assignments of error questioning the admission in evidence of answers of expert witnesses to hypothetical questions, instructions to the jury, and the refusal of the Court of Appeals to consider action of the Tennessee Board of Medical examiners against a medical witness subsequent to the trial in this cause, also were included in the petition for certiorari. We have reviewed these assignments since they could conceivably affect the issue of whether there is material evidence to support the jury's verdict against Dr. Truan. On doing so, we concluded that the Court of Appeals correctly ruled on each of the assignments.

Judgment affirmed. Costs are adjudged against Dr. James A. Truan and his surety.

FONES, BROCK and HARBISON, JJ., and ALLISON B. HUMPHREYS, Special Justice, concur.

## OPINION ON PETITION TO REHEAR

COOPER, Justice.

Dr. James A. Truan has filed a petition to rehear taking issue with this court's holding that the evidence supports the jury's finding that petitioner was guilty of malpractice which proximately caused or accelerated the death of Mrs. Smith. Petitioner's attack on the holding is two pronged. First, petitioner insists the Court of Appeals exonerated him of negligence in the treatment of Mrs. Smith up to and including May 6, 1974, and, absent an assignment of error by respondent directed to this holding, this court is limited to consideration of evidence of negligence from and after May 6, 1974. Second, petitioner insists there is no material evidence to support a finding that the activities after May 6, 1974, proximately caused or proximately contributed to respondent's damages. Both of these issues were considered by this court in affirming the judgment of the Court of Appeals, and were decided adversely to petitioner. In our opinion, the petition and briefs filed in this court—as did the assignments of error in the Court of Appeals—fairly presented the issue: Does the record contain evidence of malpractice on the part of petitioner which proximately caused or accelerated the death of Mrs. Smith? Of necessity, the resolution of the issue required this court to review all evidence, not just the evidence the Court of Appeals concluded supported the jury's verdict. On doing so, we found ourselves in agreement with the Court of Appeals that the jury reasonably could conclude from the evidence that petitioner was guilty of "actionable negligence in failing to follow his patient through and after the period of observation prescribed by him at the time of the May 6th examination." We also concluded that the evidence of treatment prior to May 6th, 1974, detailed in the opinion of the court, would support the jury's finding that Dr. Truan did not exercise that degree of care and diligence required of him in providing medical care to Mrs. Smith and that his failure to do so either materially increased the chances of or accelerated Mrs. Smith's death. We still are of the opinion that there is material evidence in the record to support the jury's finding that Dr. Truan was guilty of malpractice which proximately caused or accelerated the death of Mrs. Smith.

The petition to rehear is denied. Costs incident to the filing of the petition are adjudged against petitioner and his surety.

FONES, BROCK and HARBISON, JJ., and ALLISON B. HUMPHREYS, Special Justice, concur.