**Theodore T. BOBURKA,**
**Plaintiff–Appellee,**

v.

**Frank ADCOCK, M.D., Defendant–**
**Appellant.**

No. 91–6105.

United States Court of Appeals,
Sixth Circuit.

Argued May 11, 1992.

Decided Nov. 9, 1992.

Rehearing Denied Jan. 11, 1993.

Daniel D. Warlick (argued and briefed), Warlick, Todd & Huffstutter, Nashville, Tenn., Dan T. Bing, Memphis, Tenn., for plaintiff-appellee.

John J. Thomason (argued and briefed), Elizabeth T. Collins, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, Tenn., for defendant-appellant.

Before: RYAN, BOGGS, and BATCHELDER, Circuit Judges.

RYAN, Circuit Judge.

This is an appeal by the defendant physician from an adverse jury verdict in a medical malpractice action. Among a host of issues defendant raises on appeal, we shall address only one because it is dispositive:

Whether there is sufficient competent evidence in the record to support the jury's finding of defendant's negligence, given the speculative nature of the testimony by the plaintiff's expert witness.

Before discussing this issue, however, we must address the plaintiff's threshold argument that the court is without jurisdiction to entertain this appeal because the defendant's notice of appeal is inadequate.

For the reasons to be explained, we conclude that jurisdiction lies, and that the judgment for the plaintiff should be set aside because there is insufficient evidence on the issue of causation to support it.

## I.

### A.

In 1984, plaintiff Theodore T. Boburka was a 46–year–old Florida resident with a history of heart trouble. Boburka was a construction engineer and his job required him to travel to oversee projects. Boburka's physicians recommended that while traveling, he keep copies of his EKGs with him and make contact with a physician in each location where he was assigned.

In July 1984, Boburka was assigned to Memphis, and his daughter Heather accompanied him to that city. While in Memphis, he had occasion to visit Dr. William Burrow, to whom he had been referred by a medical referral service. Boburka related to Dr. Burrow his history of heart trouble and described the medication he was presently taking. On August 15, 1984, while traveling, Boburka exerted himself by running through an airport and then lifting heavy luggage. He experienced severe pain. The next day, August 16, he again visited Dr. Burrow who performed an EKG and diagnosed muscle strain.

On the very early morning of August 18, Boburka woke up with severe pain and his daughter drove him to the Methodist Hospital South emergency room. A nurse took his vital signs, and he was examined by the defendant, Dr. Frank Adcock. Dr. Adcock's examination, according to Boburka, consisted of poking him on his left shoulder blade a few times. Dr. Adcock was told of Boburka's history of muscle strain and was advised that a recent EKG had been taken, but he did not order a new EKG or a chest x-ray. Dr. Adcock diagnosed Boburka's condition as muscle strain and prescribed a small dose of Demerol, a pain medication.

After returning home, Boburka continued to suffer severe pain. He returned to the hospital emergency room at 6:45 a.m. and was again seen by Dr. Adcock who gave Boburka another dose of the same pain medication. Boburka then returned home and fell asleep.

Later that same day, Boburka visited a Dr. Mellor, a physician in Dr. Burrow's clinic. Dr. Mellor received Boburka's history and diagnosed muscle strain, not a heart attack. Two days later, on August 20, Boburka visited Dr. Burrow, who also diagnosed muscle strain. On August 24, Boburka began suffering severe pain and had difficulty breathing. He returned to the Methodist Hospital South emergency room where he was seen briefly by Dr. Adcock. After Boburka passed out, another physician completed the examination. Boburka was diagnosed as suffering from congestive heart failure and was sent to Methodist Hospital Central where, several days later, successful bypass surgery was performed. The surgery, however, did not alleviate the effect of the earlier heart attack which Boburka's expert testified had been occurring during Boburka's second visit to the emergency room on August 18, 1984, and which caused significant injury to Boburka's heart muscle. Trial testimony revealed that this injury significantly

reduced Boburka's longevity and endurance.

### B.

Boburka filed a complaint in federal court, claiming diversity jurisdiction. In due course, Dr. Adcock moved for summary judgment. Boburka filed no reply and the district court denied the motion.

Six months prior to trial, Dr. Adcock filed a motion in limine to exclude the testimony of Dr. Franklin T. Tew, a physician Boburka intended to call as an expert witness. The district court referred the motion to a magistrate judge who denied it. Dr. Adcock filed exceptions to the magistrate judge's order, but the district court permitted the ruling to stand, and the case proceeded to trial.

At the close of the plaintiff's case, Dr. Adcock moved for a directed verdict. The motion was denied. After presenting his own case, Dr. Adcock again moved for a directed verdict and the motion was again denied. The district court then instructed the jury and provided it with a special verdict form. After several days of deliberation, which included a supplemental instruction, the jury returned a verdict for Boburka in the amount of $600,000.

Dr. Adcock moved for judgment notwithstanding the verdict or, in the alternative, for new trial or remittitur. The district court denied the motion. Dr. Adcock then moved to reconsider and the district court denied that motion. Dr. Adcock appeals from the denial of these two motions.

### II.

### A.

#### Jurisdiction and Standard of Review

■ Boburka advances as a threshold issue the argument that this court lacks jurisdiction over Dr. Adcock's appeal because the notice of appeal did not specify that Dr. Adcock was appealing from the final judgment, but only that he was appealing from the denials of the motion for a JNOV or, alternatively, a new trial or re-

mittitur, and the denial of the motion for reconsideration.

Dr. Adcock's notice of appeal specifies that he appeals from the denial of his two post-trial motions. However, his brief before this court argues that the district court erred in failing to grant his motion for a directed verdict, as well as failing to grant his post-trial motions. Strictly construed, the notice of appeal does not preserve the denial of the directed verdict issue.

Nevertheless, Dr. Adcock's intent is clear. In *Peabody Coal Co. v. Locals 1734, 1508 & 1548*, 484 F.2d 78 (6th Cir.1973), this court held that certain defects in a notice of appeal are not always fatal:

> The present case involves a motion to reconsider, which is in the nature of a Rule 59 motion to alter or amend judgment. . . .
>
> > "[T]his defect is not fatal where it can be reasonably inferred from the notice of appeal that the intent of the appellant was to appeal from the final judgment, if it also appears that the appellee has not been mislead.". . . .
>
> Peabody's contention that this Court lacks jurisdiction to consider the appeal because of the improper notation on the notice of appeal is without merit.

*Id.* at 81–82 (quoting *Lumbermen's Mutual Ins. Co. v. Massachusetts Bonding & Ins. Co.*, 310 F.2d 627, 629 (4th Cir.1962)). The Fifth Circuit recently concurred in this reasoning, noting that "every Circuit . . . has treated an appeal from an order denying a motion for new trial as an appeal from the adverse judgment itself." *Osterberger v. Relocation Realty Serv. Corp.*, 921 F.2d 72, 73 (5th Cir.1991). We conclude that Dr. Adcock's notice of appeal adequately preserved for appeal all the issues he raises before this court. Therefore, we shall review the district court's denial of Dr. Adcock's trial motion for directed verdict and his post-trial motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial.

On a motion for judgment notwithstanding the verdict or for a directed verdict, the district court must determine whether

there was sufficient evidence to raise a material issue of fact for the jury. *Monette v. AM–7–7 Baking Co.*, 929 F.2d 276, 280 (6th Cir.1991). The motion should be granted " 'if there is a complete absence of pleading or proof on an issue or issues material to the cause of action....' " *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1015 (6th Cir.1987) (citation omitted). This court applies the same standard when reviewing trial court decisions. *Monette*, 929 F.2d at 280.

We review a trial court's grant or denial of a motion for a new trial for abuse of discretion, which is defined as a " 'definite and firm conviction that the trial court committed a clear error of judgment.' " *Id.* (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989)).

### B.

Sufficiency of the Evidence on Causation

Dr. Adcock argues that the testimony of plaintiff's expert, Dr. Tew, was mere speculation and does not establish sufficient evidence of a causal nexus between Dr. Adcock's acts or omissions and Boburka's increased heart injury. After weighing the relevant Tennessee statute and case law, we agree.

When its jurisdiction is grounded in diversity, this court is bound by state law with regard to sufficiency of the evidence. *Gold v. National Sav. Bank*, 641 F.2d 430, 434 (6th Cir.), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 100 (1981). In Tennessee, the rule is that the appellate court must accept all the evidence for the prevailing party as true, and all reasonable inferences in the party's favor. " 'However, it is also clear that under Tennessee law there must be substantial and material evidence from which the jury could have based a verdict for the prevailing side.' " *Jarrett v. Epperly*, 896 F.2d 1013, 1017 (6th Cir.1990) (quoting *Gold*, 641 F.2d at 434).

The theory of Boburka's case is that Dr. Adcock owed a duty of care to Boburka to examine him completely when he visited Dr. Adcock in the emergency room. When Dr. Adcock failed to hospitalize Boburka but only prescribed an injection for pain, Dr. Adcock breached that duty. While this breach did not cause Boburka's heart attack, the argument continues, the breach did cause greater damage to Boburka's heart; damage that would not otherwise have resulted had Dr. Adcock rendered proper treatment. Boburka argues that the increased injury to his heart resulted in compensable damages for emotional distress, physical distress, and loss of enjoyment of life.

Dr. Adcock attacks the testimony of Dr. Tew, plaintiff's expert, as being too speculative to constitute any evidence of causation. Dr. Tew began treating Boburka in October 1984, more than a month after Boburka's heart attack. A careful examination of the trial transcript reveals that the only testimony by Dr. Tew relating to causation is the following passage:

[Q.] Do you have an opinion based upon your medical education, experience and training, and to a reasonable degree of medical probability as to whether or not any damage sustained by Mr. Boburka would have been prevented had he received treatment, such as hospitalization and a complete cardiac work-up on the 18th of August 1984?

A. Obviously one cannot state with absolute certainty whether an outcome would have been different or not if the patient had been hospitalized on the 18th. But given the tools and the treatment that's [sic] we have nowadays, including 1984, the patient certainly had an *excellent chance* of being much better managed with a *significant chance* of reducing the amount of heart injury if he had been hospitalized on the 18th rather than on the 24th.

. . . .

... I'm talking about a reduced amount of heart muscle injury with prompt, more aggressive treatment. There are things that one can do in 1984 and today, if you do them early enough you can reduce or prevent heart muscle injury.

In a special interrogatory, the jury found that the "negligence on the part of Dr. Adcock proximately contribute[d] to the severity of the heart condition suffered by Mr. Boburka August 24, 1984...."

In denying Dr. Adcock's post-trial motion, the district court did not evaluate the sufficiency of Dr. Tew's testimony. Instead, the court held: "The jury verdict, in the Court's judgment, is not based upon speculative evidence. The discriminating manner in which the jury answered the special interrogatories submitted to them reflects this argument."

A Tennessee statute establishes the elements a plaintiff must prove in a medical malpractice action. It provides, in relevant part:

> In a malpractice action, the claimant shall have the burden of proving ...:
>
> (1) The recognized standard of acceptable professional practice....
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn.Code Ann. § 29–26–115(a). The Tennessee Supreme Court has held that this provision "essentially codifies the common law elements of negligence without substantive modification." *Cardwell v. Bechtol*, 724 S.W.2d 739, 753 (Tenn.1987). Because this portion of the statute effects no modification of the law of causation,[1] we shall consider cases that have addressed causation in the medical malpractice context and in other negligence contexts.

In *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 862 (Tenn.1985), the Tennessee Supreme Court discussed extensively the type of evidence necessary to demonstrate proximate cause. There the court considered testimony from the plaintiff's expert as to whether, if the defendant had not been negligent in seeking medical assis-

tance, the decedent would have survived. The expert testified that the decedent's survival " 'is something that we can only speculate in. I have seen patients come in like this and be able to—to help them, and sometimes they've recovered.' " *Id.* at 861. The court held this testimony was insufficient to prove proximate cause. Drawing from numerous other sources, it noted:

> "The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that *it is more likely than not* that the conduct of the defendant was a cause in fact of the result."....
>
> "The *mere possibility* of a causal relationship, without more, is insufficient to qualify as an admissible expert opinion."

*Id.* at 861, 862 (emphasis added) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 41, at 269 (5th ed. 1984); and *Kirschner v. Broadhead*, 671 F.2d 1034, 1039 (7th Cir.1982)).

This court relied on *Lindsey* and other Tennessee Supreme Court decisions in *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir.1988). This court considered the requisite degree of medical certitude necessary to establish a causal link between the defendant's negligence and the plaintiffs' injuries, holding:

> Whereas numerous jurisdictions have rejected medical experts' conclusions based upon a "probability," a "likelihood," and an opinion that something is "more likely than not" as insufficient medical proof, the Tennessee courts have adopted a far less stringent standard of proof and have required only that the plaintiffs prove a causal connection between their injuries and the defendant's tortious conduct by a preponderance of the evidence. While, in accordance with Tennessee common law, plaintiffs' proof by a reasonable medical certainty requires them only to establish that their particular injuries *more likely than not* were caused by ingesting the contaminated water, their proofs may be neither speculative nor conjectural.

1. We note that another section of the same statute modifies the law by imposing more rigorous procedural requirements on the plaintiff, such as requiring that a testifying expert must be licensed in Tennessee or a bordering state. Tenn.Code Ann. § 29–26–115(b).

*Id.* at 1201 (emphasis added). The court continued, specifically noting the kind of testimony that falls below the required standard:

> Medical testimony that ingesting the contaminated water "possibly," "may have," "might have," or "could have" caused the plaintiffs' presently ascertainable or anticipated injuries does not constitute the same level of proof as a conclusion by a reasonable medical certainty.

*Id.*

Construing the Tennessee malpractice statute in light of the foregoing cases, we conclude that the plaintiff was required to prove that it is more likely than not that defendant's negligence caused plaintiff to suffer injuries which would not otherwise have occurred. Applied to this case, Dr. Tew's testimony, that but for Dr. Adcock's negligence in not hospitalizing Boburka on August 18, Boburka had a "significant chance" of avoiding increased heart injury, fails to meet the requisite standard to prove causation. Although Tennessee law requires this court to draw a fine line between sufficient and insufficient proof of causation, we believe that a "significant chance" rather plainly falls below the "more likely than not" standard. Rather, testimony in this case concerning a "significant chance" is comparable to testimony about a "mere possibility," rejected by the Tennessee Supreme Court in *Lindsey* as insufficient to prove proximate cause.

In an attempt to salvage some value from Dr. Tew's testimony, Boburka urges this court to permit recovery for the "loss of chance" of reduced heart muscle injury. Boburka relies on a doctrine known as loss of chance causation, adopted in some jurisdictions. This theory allows a medical malpractice plaintiff to recover if he produces evidence that the defendant physician's malpractice reduced the patient's chances for a better outcome, even if the chance of the better outcome without the physician's

negligence was less than fifty percent.[2] Courts that have adopted this view "are united in their rejection of the requirement that there be testimony that the patient had an above–50–percent chance of a better result absent malpractice." John D. Hodson, Annotation, *Medical Malpractice: "Loss of Chance" Causality,* 54 A.L.R. 4th 19 (1987). A review of Tennessee medical malpractice decisions reveals that it is not entirely clear whether Tennessee has adopted this doctrine.

The most factually analogous case to the present case is *Watkins v. Russell,* 564 S.W.2d 367 (Tenn.Ct.App.), *cert. denied, id.* (Tenn.1976). Plaintiff in that case claimed that the defendant's failure to hospitalize plaintiff's decedent immediately when decedent initially visited defendant's office constituted negligence and resulted in the patient's fatal heart attack later that day. Plaintiff relied on the deposition of a single physician. When asked the question whether immediate hospitalization would have increased decedent's chances of survival, the physician replied that "there is some possibility that it would have made a difference...." *Id.* at 369. The trial court directed a verdict for defendant, and the appellate court affirmed, holding: "The small possibility of survival admitted by [plaintiff's physician] precludes a finding by the jury that [defendant's] negligence was a proximate cause of death." *Id.* This seems to foreclose recovery for the loss of chance of survival.

The Tennessee Supreme Court's later decision in *Truan v. Smith,* 578 S.W.2d 73 (Tenn.1979), contains language, however, that may be read as opening the possibility that "loss of chance" may be a basis for recovery in Tennessee. In *Truan,* the court upheld a jury verdict in a medical malpractice case. In an opinion on a petition to rehear, the court noted that it was presented with the issue of whether "the record contain[ed] evidence of malpractice

---

**2.** For example, in *Herskovits v. Group Health Cooperative,* 99 Wash.2d 609, 664 P.2d 474 (Wash.1983), the Washington Supreme Court held that the reduction of a patient's chance for survival from thirty-nine percent to twenty-five

percent due to a negligent failure to diagnose his cancer was sufficient proof of causation for the case to go to a jury. *See also Jeanes v. Milner,* 428 F.2d 598 (8th Cir.1970) (construing Arkansas law).

on the part of petitioner which proximately caused or accelerated the death of [respondent]." *Id.* at 77. The court reiterated its original holding that evidence supported "the jury's finding that [petitioner] did not exercise that degree of care and diligence required of him in providing medical care to [respondent] and that his failure to do so either *materially increased the chances of* or accelerated [respondent's] death." *Id.* (emphasis added).

This language from *Truan* is somewhat ambiguous and lends itself to two interpretations. One interpretation would seem to permit a medical malpractice plaintiff to recover for the loss of chance, since allowing recovery for negligence that "materially increased the chances of" death is the converse of allowing recovery for negligence that resulted in a "loss of chance" for recovery. Under this interpretation of *Truan*, the Tennessee Supreme Court would have established a new standard for proximate cause. The second, narrower interpretation is that the *Truan* court did not intend to depart from Tennessee's traditional "more likely than not" principle of proximate cause but merely used the phrase "materially increased the chances of" as a shorthand way to apply the traditional standard to the case before it.

We think the second, narrower interpretation is sounder. We believe it unlikely that the Tennessee Supreme Court would depart from traditional proximate cause principles without a full explanation or citation of authority. We also note that in a decision released only two months before *Truan*, the court reaffirmed its acceptance of the reasonable medical certainty standard of proximate cause. *Owens Illinois, Inc. v. Lane*, 576 S.W.2d 348, 349–50 (Tenn. 1978).

We are fortified in this view because a subsequent decision from the Tennessee Court of Appeals interpreted *Truan* narrowly. In *Alessio v. Crook*, 633 S.W.2d 770 (Tenn.Ct.App.), *appeal denied, id.* (Tenn.1982), the plaintiff claimed that the defendant had negligently failed to discover, diagnose, and treat cancer in the plaintiff's lung. The plaintiff sought a jury instruction based on a liberal reading of *Truan*. The requested instruction stated that the defendant's negligence would constitute proximate cause if the negligence "materially increased the chances of [plaintiff] having to lose his entire right lung rather than a portion thereof...." *Id.* at 774–75. The trial court rejected this instruction, and instead instructed the jury that the defendant's negligence would constitute proximate cause if it "caused [plaintiff] to lose his entire right lung, rather than a portion thereof...." *Id.* at 775. The approved instruction would not permit recovery based merely on the loss of the chance that plaintiff's entire lung could have been saved. The appellate court affirmed, concluding that *Truan* did not support plaintiff's instruction and that the trial court properly instructed the jury as required by Tenn.Code Ann. § 29–26–115(a)(3). *Id.* at 776. The Tennessee Supreme Court denied permission to appeal. *Id.* at 770.[3]

---

**3.** One commentator, after reviewing both *Truan* and *Alessio,* concluded that Tennessee does not recognize the loss of chance doctrine. Note, *Loss of Chance in Medical Malpractice Cases: A Contra View With an Examination of Tennessee's Current Position,* 20 Mem.St.U.L.Rev. 81, 109 (1989).

We are somewhat troubled by a recent Tennessee decision discussing medical malpractice causation issues, an unpublished opinion from the Tennessee Court of Appeals, *Kilpatrick v. Bryant,* No. 53, 1990 WL 165790, 1990 Tenn. App. LEXIS 785 (Tenn.Ct.App. Nov. 1, 1990). The *Kilpatrick* court reviewed *Truan* and *Alessio,* and held that "it appears that Tennessee does recognize that there can be recovery for loss of a better chance or an increase in a risk

of harm. However, we find nothing in these two cases that would change the established rules concerning proof of proximate cause." *Id.,* slip op. at 5. This conclusion is puzzling because if, in fact, *Truan* and *Alessio* did not change the established rules relating to proximate cause, then the law would *not* permit recovery for the loss of a better chance.

In any event, the result in *Kilpatrick* accords with traditional principles of proximate cause. The court considered testimony "based on a reasonable degree of medical certainty, that the delay of four (4) months in the operation performed increased the likelihood of [plaintiff] suffering irreparable damage." *Id.* at 3. The court held that this testimony did "not rise to the level required by the statute and fail[ed] to establish that the plaintiff 'suffered injuries

This review of Tennessee authority leaves us with the impression that Tennessee has not affirmatively adopted the loss of chance doctrine. Lacking such guidance, we shall rely on the traditional rule of proximate causation, as articulated in *Lindsey*. We do not give *Truan* the liberal reading urged by Boburka, and instead read *Truan* as affirming traditional principles of proximate cause. Therefore, *Truan* provides no support for the contention that Dr. Tew's testimony sufficiently proved proximate cause. Even after *Truan*, a plaintiff, under Tennessee law, must introduce proof that it is more likely than not that absent the physician's malpractice, the patient would not have suffered the complained of damages. Dr. Tew's testimony, that if Dr. Adcock had hospitalized Boburka on August 18 Boburka would have had a "significant chance" of reduced heart injury, is insufficient.

We conclude that Tennessee has not adopted the loss of chance theory of proximate cause in medical malpractice cases but instead continues to follow traditional proximate cause principles. Under the traditional principles, Dr. Tew's testimony, which was the only significant evidence on the issue of causation, was insufficient to demonstrate that it was more likely than not that Dr. Adcock's negligence caused the increased damage to Boburka's heart. We conclude, as a matter of law, that it was not, and that Dr. Adcock was entitled to a directed verdict.

### III.

REVERSED and REMANDED for entry of a judgment for the defendant.

---

which would not otherwise have occurred' due to the defendant's negligence." *Id.* at 7 (quoting Tenn.Code Ann. § 29–26–115(a)(3)).

We note that the parties in *Kilpatrick* did not seek review by the Tennessee Supreme Court, and thus there is no indication that the Tennessee Supreme Court would adopt the dicta' in *Kilpatrick* about loss of chance.