PEABODY COAL COMPANY,
Plaintiff-Appellee,

v.

LOCAL UNION NOS. 1734, 1508 AND 1548, UNITED MINE WORKERS OF AMERICA, and District 23, United Mine Workers of America, Defendants-Appellants.

No. 72–2106.

United States Court of Appeals, Sixth Circuit.

Sept. 13, 1973.

Albert W. Spenard, Madisonville, Ky., for appellants; William R. Thomas, Madisonville, Ky., Harrison Combs, Washington, D. C., on brief.

Ronald M. Sullivan, Owensboro, Ky., for appellee; William G. Craig, John S. Hager, Sandidge, Holbrook, Craig & Hager, Owensboro, Ky., on brief; Joseph M. Touhill, St. Louis, Mo., of counsel.

Before EDWARDS, PECK and KENT*, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This is an appeal from a finding of contempt for violation of a temporary

* Honorable W. Wallace Kent died May. 28, 1973.

restraining order in a labor dispute. The dispute involved three underground coal mines in Western Kentucky, the Ken, the Star and the River Queen, all owned by the appellee Peabody Coal Co. Each mine is represented by an appellant local union and all three locals are within District 23, United Mine Workers, also a defendant-appellant.

The dispute centers about the inspection of conveyor belts which convey coal from the producing coal face in an underground mine to the outside. These inspections are necessary to prevent frictional mine fires and explosions of the gas that accumulates when coal and coal dust build up around the belts during their operation. Under the Federal Coal Mines Health and Safety Act of 1969, which became effective in March 1970, such inspections are required ". . . after each coal-producing shift has begun." 30 U.S.C. § 863(d)(1).

When the Act took effect in 1970, the Federal Bureau of Mines (hereafter Bureau) accepted the State of Kentucky's then current program for certifying these belt inspectors until such times as the Bureau could view the program. At that time neither the Act nor the Bureau had established criteria for certifying belt inspectors.[1] The Act provides, and did then as well, that a certified person is one who is "certified . . . by the State in which the coal mine is located to perform duties prescribed by [the Act, provided that the State program meets the] minimum Federal standards established by the Secretary. . . ." 30 U.S.C. § 878(a). In March 1970, Kentucky was providing only "first class" certification, a classification given to a candidate who had met certain training and experience standards fixed by the Kentucky Department of Mines and Minerals (hereafter Department). Thereafter, however, Kentucky established requirements for "Belt Examiners," an apparent lower level of classification, and certified people meeting the qualifications. Among other things, the qualifications for "Belt Examiners" did not include the experience level required for "first class" certification. Of course, the Bureau had not recognized this classification since it had not reviewed and approved it.

On April 25, 1972, a grievance[2] was filed at the Ken mine claiming inadequate compensation for the four union belt inspectors there. This grievance reached the third stage of the grievance process when the parties agreed to hold the grievance in abeyance pending the outcome of the negotiations between the Bureau and the Department regarding the qualifications and certifications of the belt inspectors.

On May 13, a grievance filed at the Star mine asked that the belt inspectors' duties be "posted"[3] for union members with the first class certification. This grievance was also held in abeyance by agreement of the parties pending the outcome of the aforementioned negotiations.

In the meantime, the parties agreed, both at the Star mine on May 20 and the Ken mine on May 30, that only union members would inspect the belts until the federal-state agreement was reached. As to the River Queen mine, since the grievance procedure regarding these disputes had only been orally initiated as of June 1, the only agreement reached referable thereto was that the resolution of any grievance would await the outcome of the negotiations.

On May 31, the Bureau announced that Kentucky's first class certification

1. For present application, see 30 C.F.R. § 75.-100 (1972).

2. In November 1971, Peabody signed a collective bargaining agreement with the defendants. The agreement contained a mandatory arbitration clause.

3. Posting is a term meaning at the time a new job is available at a union plant or company, the vacant job is posted on the bulletin board so that all qualified and interested men may bid on it. The bidders are then subjected to the selection process.

would be required for all belt inspectors. The next day, at the Star, the union demanded that the jobs be opened for bids, and when this was not done, the miners struck. On June 2, however, the Bureau apparently changed its position and announced that the state certified "belt examiners" were tentatively acceptable. On that day the miners at Ken walked out and on June 3 the River Queen's miners joined the walkout. At none of the mines was there a resort to the grievance procedure.[4]

On June 6, a complaint having been filed by Peabody on June 5, the U.S. District Court for the Western District of Kentucky granted a temporary restraining order which required the parties to submit the dispute to the grievance procedure and enjoined the work stoppage at all three mines. But the striking miners did not return to work and on June 9 an order to show cause why the defendants-appellants should not be held in contempt of court was issued by the District Court. Defendants' response set up two basic defenses: first, that the walkout was caused by unsafe working conditions and thus is protected under 29 U.S.C. § 143[5]; second, that the defendants attempted to get the miners to return to work but were unsuccessful.

At the show cause hearing held on June 14 the District Judge observed that his crowded docket precluded the conduct of a full hearing and allowed each side a 15-minute argument after refusing to take evidence on the defenses or the contempt charge itself. He then found the defendants in contempt of court, fined the Locals $2,500 plus $500 per day for each day after June 14 that they remained in contempt, and fined District 23 $5,000 and $1,000 per day for each day after June 14 it was in contempt. At the same time the parties agreed to continue the temporary restraining order and stipulated that it had been "providently granted." A hearing on the request for a preliminary injunction was scheduled for June 20.

On June 16, Peabody filed a motion to reconsider the June 14 contempt fines and increase them, alleging that the defendants were still in contempt. This motion was considered by the District Judge at the time of the hearing on the preliminary injunction, and on June 22 the Court raised the fine to $4,000 per day against the District and $1,000 per day against each Local. It appears that this action was successful in forcing the miners to return to work because there are no other proceedings in the record involving this issue.

On June 20–21, a hearing was conducted on Peabody's motion for a preliminary injunction at which the District Court considered all the motions then pending in the case. On June 22, the District Court issued a preliminary injunction which ordered the defendants to end their work stoppage and submit the dispute to the grievance machinery. Six days after the filing of the preliminary injunction, defendants filed a motion to reconsider the fines against them, alleging that (1) Peabody had notified the striking miners of the contempt hearing on June 14 and then used their presence at the hearing as evidence

4. At the time of the work stoppage, the following conditions prevailed: At the Ken and Star, the belts were being inspected by the "Belt Examiners" and union members who held the first class certificates. The belts at the River Queen were being inspected by the "Belt Examiners" and by company people holding first class certificates.

5. 29 U.S.C. § 143 provides:
"Nothing in this chapter shall be construed to require an individual employee to render labor or service without his consent, nor shall anything in this chapter be construed to make the quitting of his labor by an individual employee an illegal act; nor shall any court issue any process to compel the performance by an individual employee of such labor or service, without his consent; nor shall the quitting of labor by an employee or employees in good faith because of abnormally dangerous conditions for work at the place of employment of such employee or employees be deemed a strike under this chapter."

that the defendants did in fact have control over them, and (2) that the Court had allowed no evidence to be taken at the contempt hearing and therefore the fines should be reexamined in light of evidence subsequently received involving the unions' attempt to get its members to return to work. This motion was overruled by the District Court on July 17. On August 16 the defendants filed a notice of appeal from the "July 17, 1972" order.

Three jurisdictional issues are raised on appeal. First, it is claimed that the appellants have failed to designate a final, appealable order in their notice of appeal; second, that the contempt order is interlocutory and hence non-appealable; third, that the notice of appeal was untimely filed. We will treat these sequentially.

■ Peabody first contends that this Court lacks jurisdiction to consider this appeal for the reason that the notice of appeal indicates that the defendants are appealing a discretionary order which is non-appealable; namely, the denial of a motion for reconsideration. We conclude, however, that the failure of defendants to name either the June 14 order (contempt citation) or the June 22 order (preliminary injunction) is not fatal to the appeal.

In the case of United States v. Ellicott, 223 U.S. 524, 32 S.Ct. 334, 56 L.Ed. 535 (1912), a judgment was entered in May 1908 and a timely motion for a new trial was filed in August, which was overruled in January 1909. Later that January, a motion was made to amend the findings of fact and that motion was granted in part and overruled in part on February 15. Notice of appeal was then filed on February 25 from the judgment in January denying the motion for new trial. Responding to the allegations that the appeal was not taken within the statutory ninety-day appeal period and that the appeal was filed from the order denying the motion for new trial, the Court stated a general rule that judgments are not considered final, and hence

the time for appeal does not run, until the date of disposition of a motion for new trial or petition for rehearing, if applicable. 223 U.S. at 539, 32 S.Ct. 334. The Court also found that the failure to specify in the notice the final judgment of May 1908 was not fatal.

The rule has been applied more recently in the Courts of Appeals. For example, in Serzysko v. Chase Manhattan Bank, 461 F.2d 699 (2d Cir. 1972), plaintiff had filed in the District Court a series of motions, the effect of which was to request a new trial under Rule 59, F.R.Civ.P. The motions were denied and the notices of appeal referred only to the orders denying these motions. Nevertheless the court said:

> "The denial of a Rule 59 motion is normally appealable only in connection with the judgment to which it relates. . . . [H]owever, appellate courts may consider an appeal of only the denial of a Rule 59 motion as harmless error, and treat the appeal as being from the underlying judgment when such an appeal would be timely. . . ." 461 F.2d at 701 (citations omitted).

The present case involves a motion to reconsider, which is in the nature of a Rule 59 motion to alter or amend judgment, and therefore should be treated similarly. Gainey v. Brotherhood of Railway and Steamship Clerks, 303 F.2d 716, 718 (3d Cir. 1962). See, also, Lumberman's Mutual Insurance Co. v. Massachusetts Bonding and Insurance Co., 310 F.2d 627 (4th Cir. 1962), wherein the appellant's notice of appeal referred to an interlocutory order and not to a final order. In that case, the court rejected the contention that it lacked the jurisdiction to consider the final order in the case.

> "[T]his defect is not fatal where it can be reasonably inferred from the notice of appeal that the intent of the appellant was to appeal from the final judgment, if it also appears that the appellee has not been mislead." 310 F.2d at 629 (citations omitted).

Thus Peabody's contention that this Court lacks jurisdiction to consider the appeal because of the improper notation on the notice of appeal is without merit.[6]

In a second jurisdictional argument, Peabody claims that this Court lacks jurisdiction over the appeal because the June 14 contempt order is interlocutory in nature by virtue of the fact that it is a civil contempt order against a party to the suit. Peabody argues that defendants had two alternatives: either apply for a writ of prohibition or mandamus, or appeal the order in an appeal from a final order or decree. Since neither route was taken, Peabody contends that this Court lacks jurisdiction.

This argument is based on a line of Supreme Court cases typified by Doyle v. London Guarantee and Accident Co., Ltd., 204 U.S. 599, 27 S.Ct. 313, 51 L.Ed. 641 (1907). In that case, defendants failed to produce documents, books, etc., as ordered by the court and were cited for contempt. In affirming the dismissal of the appeal by the Court of Appeals, the Supreme Court stated:

"[W]e deem it settled that an order punishing for contempt, made in the progress of the case, when not in the nature of an order in a criminal proceeding, is regarded as interlocutory and to be reviewed only upon appeal *from a final decree in the case.*" 204 U.S. at 603, 27 S.Ct. at 314 (emphasis supplied).

See, also, Fox v. Capital Co., 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936); SEC v. Naftalin, 460 F.2d 471 (8th Cir. 1972); Fireman's Fund Insurance Co. v. Myers, 439 F.2d 834 (3d Cir. 1971).

Of course, it is not necessary to appeal the final order to appeal a contempt citation; rather, all that is required is that a final order exist, so that the policy preventing piecemeal litigation is served. Thus, the requirement is for an appeal "from a final decision," not an appeal *of* a final decision. Certainly it would make little sense to compel the appeal of a decision that might be favorable, e.g., a decision not to grant a permanent injunction, so that the appellant might attack an improper contempt citation.

The recent case of Emery Air Freight Corp. v. Local Union 295, International Brotherhood of Teamsters, 449 F.2d 586 (2d Cir. 1971), cert. denied, 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972), involved a situation much like the present. There the District Court handed down an ex parte temporary restraining order, found the union in contempt without holding an evidentiary hearing, imposed a $50,000 fine, and later issued a preliminary injunction after a hearing. The Court of Appeals found the preliminary injunction appealable and also considered the contempt citation and fines, but without any discussion of the need for a final order under 28 U.S.C. § 1291.

"We thus come, finally, to the merits of the appeal. We note in passing that whatever questions of appellate jurisdiction there might have been in an appeal from only the April 22 and April 26 orders and the April 27 Final Contempt Order . . . since the appeal from the June 22 preliminary injunction is clearly proper, 28 U.S.C. § 1292(a), we will consider the merits

---

6. Higginson v. United States, 384 F.2d 504 (6th Cir. 1967) (Peck, J., concurring), cert. denied, 390 U.S. 947, 88 S.Ct. 1034, 19 L. Ed.2d 1137 (1968), is not in point. There a third amended complaint had been dismissed and this was the subject of the appeal. The notice of appeal referred only to the order dismissing the second amended complaint and to another order refusing a new trial on the second amended complaint. Both orders were interlocutory. My con-

curring opinion in the case expressed the view that an attempted appeal from these interlocutory orders did not meet the jurisdictional requisites particularly when the later, and critical, final and appealable order was not included in the notice. Such a situation is readily distinguishable from the instant case where the notice recited the order denying the motion to reconsider, which of course suspended the finality of the final order.

of the various orders." 449 F.2d at 590. (Citation omitted.)

While the reasoning of the case appears attractive, it is not clear that it is correct. The language of the cases clearly indicates that a final judgment is a requisite for jurisdiction although certain interlocutory orders, such as preliminary injunctions, Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1941), are appealable.[7] See, 28 U.S.C.A. §§ 1291, 1292. Also, Fireman's Fund Insurance Co. v. Myers, *supra,* 439 F.2d at 838; Southern Railway Co. v. Lanham, 403 F.2d 119, 124 (5th Cir. 1968). And while it is sometimes argued that the contempt would be best considered as quickly as possible, this argument was rejected in *Doyle, supra:*

> "It may be true, as said in argument, that, unless the party complies with the order, he may be subjected to fine or imprisonment; and if the order cannot be reviewed until after final decree it may come too late to be of any benefit to the party aggrieved. But the power to punish for contempt is inherent in the authority of courts, and is necessary to the administration of justice and part of the inconvenience to which a citizen is subject in a community governed by law regulated by orderly judicial procedure. As has been said, while the party may suffer imprisonment, 'he carries the keys of the prison in his own pocket,' In re Nevitt, 117 Fed.Rep. 448, and by compliance with the order of the court, may deliver himself from punishment." 204 U.S. at 607, 27 S.Ct. at 315.

Thus it appears that a final judgment under § 1291 is required.

Accordingly, the real issue is whether the defendants appealed from a final order, i.e., whether there was a final order entered in the case prior to the appellant's appeal. In this regard, we conclude that the June 22 injunction should be considered a final order. As the Supreme Court stated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), while discussing finality under § 1291:

> "The effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal. But the District Court's action upon this application was concluded and closed and its decision final in that sense, before the appeal was taken.
>
> "Nor does the statute permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results. But this order of the District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment. When that time comes, it will be too late effectively to review the present order and the rights conferred by the statute, if

7. However, it does not appear that the issue of the appealability of a contempt of a temporary restraining order in connection with the appealability of a preliminary injunction was ever before the courts prior to *Emery Air Freight, supra.* In Fireman's Fund Insurance Co. v. Myers, *supra,* the court had before it two issues: The appealability of a contempt citation under a temporary restraining order against one defendant and the validity of a preliminary injunction against a group of defendants, including the one in contempt. The court held the contempt citation non-appealable as interlocutory and did not consider whether it could be appealed in connection with the appeal of the preliminary injunction. However, the court also ruled that the order was in reality not a preliminary injunction and thus not appealable under § 1292(a), so that the question of connecting the contempt appeal with it would not have been decided anyway.

it is applicable, will have been lost, probably irreparably. 337 U.S. at 546, 69 S.Ct. at 1225.

This discussion was elaborated in Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), where the Court said:

"Under § 1291 an appeal may be taken from any 'final' order of a district court. But as this Court often has pointed out, a decision 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545, [69 S.Ct. 1221, 93 L.Ed. 1528]. And our cases long have recognized that whether a ruling is 'final' within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the 'twilight zone' of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a 'practical rather than a technical construction.' Cohen v. Beneficial Industrial Loan Corp., supra, 337 U.S., at 546, [69 S. Ct. at 1221]. See also Brown Shoe Co. v. United States, 370 U.S. 294, 306 [82 S.Ct. 1502, 8 L.Ed.2d 510]; Bronson v. LaCrosse & M. Railroad Co., 2 Black 524, 531, [17 L.Ed. 347]; Forgay v. Conrad, 6 How. 201, 203, [12 L. Ed. 404]; Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, [70 S.Ct. 322, 94 L.Ed. 299], pointed

out that in deciding the question of finality the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' " 379 U.S. at 152–153, 85 S.Ct. at 311.

In making this "practical" determination as suggested in *Gillespie*, courts have recognized that the intent of the judge is an important and relevant factor to consider. See, United States v. 1,431.80 Acres of Land in Cross County, Arkansas, 466 F.2d 820, 822 (8th Cir. 1972); United States v. Evans, 365 F.2d 95, 97 (10th Cir. 1966); Paliaga v. Luckenbach Steamship Co., 301 F.2d 403, 407 (2d Cir. 1962); Carnes v. United States, 279 F.2d 378, 380 (10th Cir. 1960). As respects the instant case while the statements of the judge [8] and Peabody [9] would seem to indicate that the intent was to enter a final order,[10] this is not clearly reflected in the documents that were the result of the hearing. However, it is apparent that the issuance of the preliminary injunction granted Peabody all the relief it prayed for and rejected the defenses proffered by the union and the locals. Thus considering the expressions of the judge and the parties, and the fact that the preliminary injunction in effect disposes of virtually all the questions in the case, we are led by a practical analysis of the case to the conclusion that the defendants are perfecting their appeal from a final order. Moreover, there seems to be little reason for delaying a decision on the contempt aspect of the case. It is clearly at an end, and there appears to

---

8. "BY THE COURT: And I want to consolidate all motions that are presently pending in this matter under Rule 65 . . . [a]nd dispose of all pending matters and motions, including temporary and permanent injunction and the merits also, and not leave anything remaining to be done in this case . . . so that a final order may be entered here and then any aggrieved party may assert his rights to have it reviewed at the appellate level if he chooses to do so." Transcript of the Proceedings on the Preliminary Injunction, page 8.

9. "The final judgment in this case consisted of two orders entered on June 22, the Preliminary Injunction and the Order on contempt fines." P. 15, appellant's brief.

10. We do not intimate that the parties can confer jurisdiction by stipulating that the court's orders were final, but merely observe that the appellant's statements in its brief manifest an intent and interpretation of the proceedings below.

be no chance that it will be altered or modified. A decision on the contempt order will have no bearing on the outcome of any remaining aspect of the case, and hence there appears to exist none of the dangers or inefficiencies of piecemeal litigation. A decision on the merits, on the other hand, would effect justice in a case where the final outcome is not difficult and decision would not be aided by further delay. Thus, the District Court's order should be considered a final order for the purposes of 28 U.S.C. § 1291. See, Firestone Tire & Rubber Co. v. General Tire & Rubber Co., 431 F.2d 1199 (6th Cir. 1970) (implementing Gillespie v. United States Steel Corp., *supra*), cert. denied, 401 U. S. 975, 91 S.Ct. 1196, 28 L.Ed.2d 325 (1971).

■ Peabody's final jurisdictional argument, that the notice of appeal was untimely filed, is easily disposed of. The motion for reconsideration was filed on June 23, six days after the orders were filed. The effect of the filing was to suspend the running of the appeals period until the motion was decided. Maryland Tuna Corp. v. Ms. Benares, 429 F.2d 307 (2d Cir. 1970). This rule has often been applied to motions for reconsideration. Pacific Maritime Association v. Quinn, 465 F.2d 108 (9th Cir. 1972); Roscoe v. Roscoe, 126 U.S.App. D.C. 317, 379 F.2d 94 (D.C.Cir.1967); Woodham v. American Cystoscope Co. of Pelham, N. Y., 335 F.2d 551 (5th Cir. 1964); Gainey v. Brotherhood of Railway & Steamship Clerks, *supra*.

The motion for reconsideration was denied on July 17, and the appellants had thirty days to file their notice of appeal, which they did on August 16. Thus, the notice of appeal was timely filed and this Court has jurisdiction.

■ The question is also raised as to whether the contempt order was improperly granted by the District Court following its denial of an evidentiary hearing. We conclude it was improperly granted.

As stated earlier, Emery Air Freight Corp. v. Local Union 295, International Brotherhood of Teamsters, *supra*, involved a situation almost exactly parallel to the instant case. There, the union struck when the parties failed to agree on a new collective bargaining agreement. On the night of April 22, the strike having begun during the day, the company obtained an ex parte temporary restraining order (TRO) from the District Court halting the strike on the basis that the strike violated the arbitration agreement between the parties. On April 23, the order was served upon the union and on the same day the union obtained a show cause order as to why the TRO should not be vacated. On April 24, the company obtained an order to show cause why the union should not be held in contempt, the strike not having been terminated. Both orders were returnable on April 26.

On April 26, after a hearing, the Court released an order continuing the TRO and stated that the issue of contempt would be considered "at the appropriate time." The next day when the union refused to return to work, there was a conference with the District Judge, after which the Court signed an order entitled "Final Order Upon Contempt Proceedings," holding the union in contempt and fining them $50,000, to be paid to the company.

A hearing on the contempt was held on the afternoon of April 28, but it is clear that the union's counsel was not given an adequate time in which to prepare. The District Judge reserved a ruling on the vacation of the TRO. The next day the union returned to work but the District Court ordered that the fine stand. A hearing was held on April 30 on the request for a preliminary injunction, and it was issued on June 11.

As noted earlier, the Court of Appeals did not enter into a serious discussion of the jurisdictional issues. However, the Court carefully discussed the merits in overturning the contempt conviction on the basis that the lack of a hearing

made the contempt citation invalid. The court concluded:

"Therefore, the critical decisions as to whether defendants were in contempt and, if so, what the sanction should be were made in an ambiguous procedural setting, and on an inadequate record. Such important questions cannot be decided in that manner, and the Final Contempt Order cannot stand. Nor can the evidence adduced at the April 28 or the April 30 hearing retroactively validate that order because the initial impact of the decision to fine defendants $50,000 obviously continued to influence the judge when he adhered to it. See In re Oliver, 333 U.S. 257, 284–285, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (concurring opinion.) [6] Since that original determination was made improperly, it must be set aside."

In the present case, the error is even more egregious than in *Emery Air Freight*. Here, the record is not only inadequate, it does not exist. While there was a hearing on the preliminary injunction, and Peabody claims that this retroactively cured the failure of the District Court to hold a hearing on the contempt, we agree with the Court in *Emery Air Freight* that the error could not be cured by a subsequent hearing. We note, too, that the motion to reconsider the contempt fines, which the company claims caused the District Court to reconsider the contempt order, was made by Peabody when it asked that the contempt fines be reconsidered and increased. Thus, it does not appear, here,

[6]. Mr. Justice Frankfurter stated:
[A]n opportunity to meet a charge of criminal contempt must be a fair opportunity. It would not be fair, if in the court in which the accused can contest for the first time the validity of the charge against him, he comes handicapped with a finding against him which he did not have an adequate opportunity of resiting.' 449 F.2d at 595.

on the facts, that the District Court adequately reexamined the finding of contempt after the hearing on the preliminary injunction.

The contempt order is vacated and the judgment of the District Court is reversed. The cause is remanded for further proceedings not inconsistent with the foregoing.