RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0472p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

TERESA CAUDILL, et al. (04-6017);
LYNN BUTLER (04-6018),

                                    *Plaintiffs-Appellants,*

         *v.*

                                                         Nos. 04-6017/6018

DORIS HOLLAN,

                                    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 03-00030—Henry R. Wilhoit, Jr., District Judge.

Argued: July 21, 2005

Decided and Filed: December 14, 2005

Before: KENNEDY, CLAY, and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael J. Curtis, CURTIS LEGAL SERVICES, INC., Ashland, Kentucky, for Appellants. Phillip Bruce Leslie, McBRAYER, McGINNIS, LESLIE & KIRKLAND, Greenup, Kentucky, for Appellee. **ON BRIEF:** Michael J. Curtis, CURTIS LEGAL SERVICES, INC., Ashland, Kentucky, for Appellants. Phillip Bruce Leslie, McBRAYER, McGINNIS, LESLIE & KIRKLAND, Greenup, Kentucky, for Appellee.

_____

## OPINION

_____

   KENNEDY, Circuit Judge. Plaintiffs appeal from the district court's dismissal of their claims against Defendant Doris Hollan, County Clerk for Boyd County, Kentucky. Plaintiffs allege that because they supported Defendant's opponent in her election, Defendant failed to reappoint them to positions as deputy county clerks in violation of their First Amendment rights of free speech and free association and in violation of their Fourteenth Amendment rights. Finding that the district court improperly granted Defendant Hollan qualified immunity with respect to certain Plaintiffs' claims against Defendant Hollan, we **AFFIRM** the judgment of the district court in part, and **REVERSE** it in part.

1

## BACKGROUND

Plaintiffs Teresa Caudill, Cheryl Fields, and Patty Conlin are all former Boyd County, Kentucky, deputy county clerks. All three had served as deputy county clerks for several years, but they were not reappointed to their positions after Hollan won election in 2002 and took office in 2003. Plaintiff Lynn Butler is the former Boyd County, Kentucky, County Clerk. She was a former deputy clerk who was appointed to that office after the death of the previously elected clerk. She never sought election to the office of County Clerk either before or after her appointment. During the election, Plaintiffs supported Hollan's opponent.

After winning the primary and the election, Defendant received a memo, dated December 16, 2002, that the county attorney circulated to all newly-elected county executives. The memo specifically warned new county executives not to use patronage dismissals. Defendant provided written notice to Plaintiffs of her decision not to rehire them on January 3, 2003.

Plaintiffs filed suit pursuant to 42 U.S.C. § 1983, claiming that they were not rehired (a constructive discharge) in violation of their First Amendment rights of free speech and free association, as applied to state actors through the Fourteenth Amendment, because they had supported Defendant Hollan's opponent. Defendant filed a motion to dismiss and for summary judgment. Defendant Hollan denied that she failed to reappoint Plaintiffs for political reasons. She also argued, in the alternative, that had she engaged in patronage dismissals as Plaintiffs alleged, she deserved qualified immunity, because the law regarding patronage dismissals of Kentucky deputy county clerks was not clearly established.

On August 28, 2003, the district court dismissed Plaintiff Butler's claims against Defendant Hollan, reasoning that as the former County Clerk, Butler did not have any expectation of continued employment or of being rehired. The court also dismissed all of Plaintiffs' claims against Defendant Hollan in her individual capacity, relying primarily on this court's decision in *Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997).

The parties conducted discovery on the deputy county clerk Plaintiffs' remaining claims. On August 11, 2004, in a second opinion, the district court dismissed the remaining claims against Defendant Hollan in her official capacity as County Clerk. The court held that Plaintiffs had presented no evidence that the office of the County Clerk had final authority to establish county policy with respect to hiring matters. The court held that such a finding would be a necessary prerequisite to Plaintiffs recovering against Defendant Hollan in her official capacity. The opinion also directed that judgment be entered for defendants.[1] Plaintiffs appeal. Their appeals have been consolidated. Plaintiffs argue that the district court should not have granted summary judgment to Hollan in either her individual or official capacities.

## ANALYSIS

A.    Jurisdiction

Although neither party raised the issue, before we address the merits of Plaintiffs' appeals, we must determine, *sua sponte*, whether we have jurisdiction over all aspects of those appeals. Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court

---

[1]Plaintiffs originally sued the Boyd County Fiscal Court and several individuals in both their individual and official capacities: Defendant Hollan (the new Boyd County Clerk), Bill Scott (the Boyd County Judge Executive), Marvin Meredith (a Boyd County Commissioner), Clarence Jackson (another Boyd County Commissioner), and Carl Tolliver (also a Boyd County Commissioner). The district court dismissed all claims against every defendant except Defendant Hollan in its August 28, 2003 order. Plaintiffs do not appeal those dismissals.

lacks jurisdiction of the subject matter, the court shall dismiss the action."). In their notice of appeal, the deputy clerk Plaintiffs failed to appeal from the judgment. The appeal was taken from the "Memorandum Opinion and Order entered in this action on August 11, 2004." In the August 11th order, the district court directed the entry of final judgment in the case. It also disposed of the deputy clerks' claims against Defendant Hollan in her official capacity as clerk. In their briefs on appeal, however, Plaintiff deputy clerks also contest the district court's August 28, 2003 opinion and order on their claims against Defendant Hollan in her individual capacity.[2] Federal Rule of Appellate Procedure 3(c)(1)(B) requires that a notice of appeal: "designate the judgment, order, or part thereof being appealed." The question that confronts us, then, is whether we have jurisdiction to hear the appeal of the August 28, 2003 order dealing with individual liability, which is not mentioned in the notice of appeal.

For the reasons that follow, we conclude that we can reach all relevant aspects of the deputy clerk Plainiffs' appeal. It has long been the rule "that an appeal of a final judgment draws into question all prior non-final rulings and orders." *McLaurin v. Fischer*, 768 F.2d 98, 101 (6th Cir. 1985). We hold that the notice of appeal sufficiently complies with Fed. R. App. P. 3 to give us jurisdiction in that the opinion of August 11, 2004, which plaintiffs do list, ordered the entry of the final judgment in the case. An appeal referencing an order that directs entry of judgment in a case is a sufficient equivalent to appealing the judgment itself, even though the judgment is entered as a separate document. In the alternative, if the notice of appeal was technically deficient, we hold that such a technical deficiency should not prevent us from reaching the merits of the appeal, nor does such a technical deficiency divest us of jurisdiction to hear the appeal. To rule otherwise would be to rely on an overly technical reading of Fed. R. App. P. 3(c). Several decisions support finding jurisdiction under analogous situations.

In *McLaurin*, the plaintiff's notice of appeal referred solely to the district court's order, which embodied the jury's verdict on a federal age discrimination claim. *Id*. The Plaintiff sought to challenge, however, earlier dismissals of state law claims and an earlier grant of a directed verdict motion, in addition to the order specifically mentioned in the notice of appeal. *Id*. The defendant argued that because the plaintiff only mentioned the order relevant to the federal age discrimination claim on appeal, the panel could address only that issue and not the other issues. *Id*. This court disagreed with the defendant, holding:

> In this case, by appealing from the district court's *final order*, Dr. McLaurin effectively preserved for review all of the district court's non-final rulings and orders, including the directed verdict and state law claim rulings. Furthermore, even assuming that the notice of appeal failed to properly preserve these issues for appeal, Dr. Fischer has failed to demonstrate any prejudice due to the alleged error; consequently, any error committed by appellant is harmless.

*Id*. at 102 (italics added for emphasis).

In *Boburka v. Adcock*, 979 F.2d 424 (6th Cir. 1993), this court allowed a defendant to appeal a court's grant of a directed verdict in favor of the plaintiff despite the fact that his notice of appeal specified only that the defendant was appealing from the district court's order denying his post-trial motions for judgment as a matter of law or for a new trial. *Id*. at 426. The notice of appeal did not mention either the final judgment or the directed verdict. *Id*. This circuit, relying on *Peabody Coal Co. v. Locals 1734, 1508 & 1548*, 484 F.2d 78 (6th Cir. 1973), and the clear intent of the defendant,

---

[2]In contrast, in Plaintiff Lynn Butler's notice of appeal, she appeals from "the Court's Memorandum Opinion and Order entered on August 28, 2003; the Court's Order overruling Plaintiff's Motion to set aside or vacate the 8/28/03 Order entered on October 6, 2003; and, the Memorandum Opinion and Order entered in this action on August 11, 2004." Plaintiff Butler thus appeals from all relevant orders in her notice of appeal.

found that although "[s]trictly construed, the notice of appeal does not preserve the denial of the directed verdict issue," the "notice of appeal adequately preserved for appeal all the issues he raises before this court." *Id.*

In *Crawford, et al. v. Roane, et al.*, 53 F.3d 750 (6th Cir. 1995), plaintiffs filed a notice of appeal that sought review of the order denying their motion for summary judgment and granting defendant's motion for summary judgment. *Id.* at 752. In their brief, however, the plaintiffs also "discusse[d] the Trustees' failure to furnish information and ma[de] clear that the [Plaintiffs] also s[ought] review of the district court's denial of their motion for leave to file an amended complaint." *Id.* The court held that, because the brief put the defendants on notice as to what was being appealed, they suffered no prejudice as a result of the plaintiffs' failure to specify that they desired appellate review of the other subjects. *Id.* at 752-53. *Cf. Sanabria v. U.S.*, 437 U.S. 54, 68 n.21 (1978) ("A mistake in designating the judgment appealed from is not always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced.") (citations omitted).

Our decision in *United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 756 (6th Cir. 1999), is not to the contrary. In *Universal*, a district court denied summary judgment for the defendants and granted summary judgment to the U.S. Government. *Id.* at 754. The district court's grant of summary judgment resulted in a permanent injunction prohibiting the defendants from distributing a medical device they claimed would help alleviate pain. *Id.* [3]The defendants made a motion to reconsider in which they argued that they deserved a new "trial"[3] due to the malfeasance of their original counsel and because one of the individual defendants could not be personally subject to the injunction. *Id.* at 756. Defendants' notice of appeal stated only that they appealed from the district court's order denying them summary judgment and granting summary judgment to the United States. *Id.* In their briefs on appeal, however, the defendants discussed arguments related to both issues raised in their motion to reconsider. *Id.* The government responded that because it was not prejudiced by the lack of notice, the court of appeals should address the arguments. *Id.* This court held that it lacked jurisdiction to review the items raised in the motion to reconsider because the notice of appeal did not specifically indicate that the defendants appealed from that motion. *Id.* at 756-67. The court did, in the alternative, address the merits of the two points and found no errors with respect to either issue. *Id.* at 757-60.

*Universal Management Services* stands for a related but different proposition than the other cases previously discussed. In short, our rule is that we will entertain arguments on all objections and asserted errors prior to the final disposition of a case if a party indicates in its notice of appeal that it appeals either the final judgment or the final order in the case. We will not, however, absent specific mention in the notice of appeal, entertain issues raised in post-judgment motions if the notice of appeal states only that the appeal is from the final order or the final judgment. This rule is understandable because most pre-judgment decisions made by a trial court are not appealable until the entry of final judgment. To the extent that the post-judgment motions relate to issues raised before judgment, the appellate court will deal with them anyway, as it did in *Universal*. If the issues raised only in post-judgment motions were new (in that they were arguments not raised prior to a final disposition of the case), then considerations of notice might require the party raising the issues be more specific if it wishes to discuss them on appeal to avoid prejudicing either the trial court or the other party.

In this case, the deputy clerk Plaintiffs did not specifically mention the judgment in their notice of appeal. Like in *McLaurin* and *Bobruka*, however, they did appeal from the final

---

[3]Our opinion does not make clear what the movants meant by "trial" as the case was apparently dismissed on summary judgment.

memorandum and opinion in the case. Under the logic of our prior cases, then, the notice of appeal provided by Plaintiffs, here, is sufficient. In addition, in this case, the Memorandum Opinion and Order of August 11, 2004 indicates that "[a] judgment in favor of the Defendant will be entered contemporaneously herewith." The judgment was entered that same day. Thus, in light of the fact that the August 11th Memorandum Opinion and Order ordered the filing of the judgment, meaning that the judgment would not have been filed were it not for the court's order, it would appear that by appealing this opinion, Plaintiffs intended to appeal the portion of the opinion ordering the entry of judgment. Such an appeal is tantamount to having appealed the judgment itself.

If the notice of appeal is technically deficient, it is readily apparent that neither this court nor the Defendant have been prejudiced in any way. Defendant understood that Plaintiffs intended to appeal the August 23, 2003 order because she addressed those arguments in her brief. She suffered no prejudice, and because the parties briefed their arguments, neither did this court. Thus, even if the notice of appeal is technically deficient, because no one is prejudiced by that defect, under our precedent, we should address the merits of the appeal.

Finally, the Supreme Court has held that if a clerk does not enter judgment on a separate document in a case, but the parties treat the judgment as if it has become final, a court of appeals may still treat the judgment as final despite the fact that a separate document entering the judgment is normally required. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 382-84 (1978). While it is true that the facts of this case are not directly related to *Bankers Trust Co.*, a useful analogy can be drawn. In *Bankers Trust Co.*, obviously, the party appealing did not reference a final judgment in their notice of appeal as no separate document existed. The party apparently appealed from the final order issued by the district court. If the entry of a separate document for a final judgment is unnecessary to allow an appeal in a case like *Bankers Trust Co.*, it seems that we are already treating a final court order as synonymous with a separate judgment for the purposes of appeal in some circumstances. If we were to hold, in this case, that a party that references the final order of a court, but does not indicate that it also appeals the judgment, does not appeal the judgment, we would be upholding form for form's sake, and would not advance justice in this case, or in general.

While the requirements of Fed. R. App. P. 3(c)(1) are jurisdictional, *Torres v. Oakland Scavenger Co. et al.*, 487 U.S. 312, 317 (1988); *United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 756 (6th Cir. 1999), our precedent, Supreme Court Precedent and Fed. R. App. P. 3(c)(4) also require that we construe the jurisdictional requirements of Fed. R. App. P. 3(c) liberally. *See Foman v. Davis*, 371 U.S. 178, 180-81 (1962); *Torres*, 487 U.S. at 316-17. Thus, our rule is that Fed. R. App. P. 3(c)(1) is a jurisdictional rule whose requirements should be liberally construed and applied.

B.      Patronage Dismissal of Deputy County Clerks

Because we have jurisdiction over this appeal, we now turn to the merits. This court reviews a grant of summary judgment de novo. *Adams v. City of Auburn Hills*, 336 F.3d 515, 518 (6th Cir. 2003). For the purposes of this appeal, we construe the evidence in the light most favorable to Plaintiffs and draw all reasonable inferences in their favor. *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)). We first address the claims of the three deputy county clerk Plaintiffs. We then address the claims of former County Clerk Lynn Butler, who seeks to be hired as a deputy clerk.

Since the Supreme Court issued its opinion in *Elrod v. Burns*, 427 U.S. 347 (1976), patronage dismissals (*i.e.*, dismissals for failure to support a particular party or candidate) have been,

in general, unconstitutional.[4]  The Supreme Court in *Branti v. Finkel*, 445 U.S. 507 (1980), clarified this rule by affirming that, although patronage dismissals were, in general, unconstitutional, "party affiliation may be an acceptable requirement for some types of government employment."  *Id.* at 517.  The *Branti* court indicated that the plaintiff must make out a prima facie case that he or she was discharged because of his or her political affiliation.  *See id.*  The defendant then must show that the plaintiff's job is of the type that would qualify for an exception to the general rule.  *Id.*  The *Branti* court described the types of positions that would qualify for the exception as policymaking positions.  *Id.*  This court, in *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996), interpreted *Branti* by  outlining four categories that qualified for the *Branti* exception:

> Category One: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;

> Category Two: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;

> Category Three:  confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors;

> Category Four:  positions that are a part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*Id.* at 1557 (footnotes omitted).  Thus, since 1996, in this circuit, assuming that a plaintiff makes out a prima facie case of unconstitutional patronage dismissal, the defendant must show that the job in question falls within one of the four *McCloud* categories.

In this case, the district court did not address whether a patronage dismissal of a deputy county clerk is a constitutional violation.  It chose, instead, to rely on qualified immunity in dismissing the complaint.[5]  Plaintiffs assert that Defendant failed to rehire them based on their support of Defendant's opponent in the election.  Viewing the deposition evidence in the light most favorable to Plaintiffs, there is evidence that Plainiffs supported Defendant's opponent, that Defendant was aware of that support, and that Defendant failed to rehire Plainiffs.  This evidence raises a triable question of fact as to whether Defendant engaged in patronage dismissals and violated Plaintiffs' constitutional rights.

---

[4]In *Branti v. Finkel*, 445 U.S. 507, 512 n.6 (1980), the Supreme Court made clear that failure to rehire due to political affiliation was no different from discharging a worker due to his or her political affiliation.  Testimony in the record indicates that deputy clerks were traditionally reappointed after each election, regardless of whether a new County Clerk took office.  It appears to be undisputed that deputy clerks had a reasonable expectation that they would be reappointed barring poor job performance, misconduct, or malfeasance.

[5]We take this opportunity to remind district courts that they may not assume a constitutional violation or skip to qualified immunity, even when qualified immunity analysis seems conclusive.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

Because Plaintiffs have placed sufficient evidence in the record from which a fact-finder could infer that Defendant knew that they supported her opponent,  the burden shifts to Defendant to prove that Plaintiffs' positions fall within one of the four *McCloud* categories.  We decide whether the deputy county clerk position is a position subject to political patronage as a matter of law. *Mumford v. Basinski*, 105 F.3d 264, 271 (6th Cir. 1997) (citing *McCloud*, 97 F.3d at 1546 and *Blair v. Meade*, 76 F.3d 97, 100 n.2 (6th Cir.1996).   Unfortunately, Defendant Hollan does not indicate which *McCloud* category should apply to deputy county clerks.

The undisputed testimony on the types of jobs Plaintiff deputy county clerks perform reveals that their jobs are essentially clerical.  They either do not have, or do not exercise, the type of discretion or authority that one would normally associate with a job subject to patronage dismissal under *McCloud*.  It would, therefore, appear that Plaintiffs' positions do not fall into any of the *McCloud* categories; however, our analysis does not end here.

The so-called "*Rice* cannon" requires this court to give "some deference" to the legislature's determination as to whether a particular job is political.  *See Rice v. Ohio Dep't of Transp.*, 14 F.3d 1133, 1143 (6th Cir. 1994) (quoting *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 246 (1st Cir. 1986)).  Defendant points to three different statutes as evidence of the Kentucky General Assembly's understanding of the deputy county clerk position.  We address each of the statutes discussed by Defendant Hollan in turn.

First, Defendant Hollan points to K.R.S. § 62.210, which makes the office of the County Clerk liable "for the the acts or omissions of deputy county clerks."[6]  In *Heggen v. Lee*, 284 F.3d 675 (6th Cir. 2002), this court found that K.R.S. § 70.040,[7] a statute with almost exactly the same wording as K.R.S. § 62.210, but which applies to sheriffs, does not convert a deputy sheriff position into a position subject to patronage dismissal.  *See Heggen*, 284 F.3d at 683.  Because we can find no meaningful difference between the two statutes, adopting our reasoning in *Heggen*, we find that the *Rice* cannon is not implicated by this statute..

Next, Defendant Hollan argues that K.R.S. § 382.990(5), which states that a "County Clerk who, by [themselves or their deputies], fail[s] to perform any duty enjoined upon them [by any of several various provisions of the Kentucky Revised Statutes] shall be guilty of a violation[,]" converts the deputy county clerk position into one subject to patronage dismissal.[8]  Defendant, in essence, argues that by virtue of this statute, a County Clerk can be criminally liable for the acts of his or her subordinates, and that this fact requires her to be able to pick politically compatible employees.  This statute, however, is no more availing than the first, since K.R.S. § 62.210

---

[6]The full text of K.R.S. § 62.210 reads: "The office of County Clerk, rather than the individual holder of the office, shall be liable for the acts or omissions of deputy county clerks. When a deputy clerk omits to act or acts in such a way as to render the clerk responsible, and the clerk discharges such responsibility, the deputy clerk shall be liable to the clerk for all damages and costs which are caused by the deputy's act or omission."  Given that deputy county clerks can be forced to reimburse the clerk's office for any acts or omissions, the fact that the clerks office is liable for the actions of the deputy county clerks is of limited utility in determining whether the position is subject to political patronage.

[7]The full text of K.R.S. § 70.040 reads:  "The sheriff shall be liable for the acts or omissions of his deputies; except that, the office of sheriff, and not the individual holder thereof, shall be liable under this section. When a deputy sheriff omits to act or acts in such a way as to render his principal responsible, and the latter discharges such responsibility, the deputy shall be liable to the principal for all damages and costs which are caused by the deputy's act or omission."

[8]A violation, as defined by K.R.S. § 500.080(17), is:  "an offense, other than a traffic infraction, for which a sentence to a fine only can be imposed."

eliminates any personal criminal liability that could attach to the individual officeholder[9] and because K.R.S. § 62.210 requires deputy county clerks to reimburse the clerks office for any fines levied on the clerk.

Finally, Defendant Hollan points to K.R.S. § 61.035, which provides that: "Any duty enjoined by law or by the Rules of Civil Procedure upon a ministerial officer, and any act permitted to be done by him, may be performed by his lawful deputy." Although this statute is one of general application in that it does not specifically mention County Clerks or deputy county clerks, Kentucky courts have held that it can apply to deputy county clerks in the performance of some duties. *See Hallahan v. Cranfill*, 383 S.W.2d 374, 376 (Ky. 1964) (a deputy county clerk can participate in the public examination of absentee ballot applications by virtue of K.R.S. § 61.035); *see also Asher v. Sizemore*, 261 S.W.2d 665, 666 (Ky. 1953) (a deputy county clerk can administer an oath in his or her own name pursuant to K.R.S. § 61.035). This statute, however, is not a clear enough expression of the Kentucky General Assembly's wish to convert the position of deputy county clerk into a political position covered by one of the *McCloud* categories. We, therefore, decline to hold that the Kentucky legislature has determined that the position of a deputy county clerk is a political position as opposed to a clerical position. Consequently, the *Rice* cannon is inapplicable.

Because Defendant has not shown that the deputy county clerk position falls under any of the *McCloud* categories, and because the *Rice* cannon is inapplicable, we hold that patronage dismissals of Kentucky deputy county clerks with routine duties violates the U.S. Constitution. When the evidence is viewed in the light most favorable to Plaintiffs, questions of material fact exist as to whether Defendant Hollan violated Plaintiffs' constitutional rights by terminating them for political reasons. We now proceed to the second step of our analysis and address whether Defendant Hollan is entitled to qualified immunity.[10]

---

[9]K.R.S. § 62.210 does not differentiate between criminal and civil liability. It simply makes the office of the County Clerk liable for all acts and omissions of deputy clerks. It appears that a violation has no effect other than a monetary penalty under Kentucky law. K.R.S. § 62.210 also requires deputy clerks to reimburse the office of the County Clerk for any fines imposed on the office of the County Clerk because of the deputy clerks' acts or omissions. It would appear, then, that, under Kentucky law, the exposure of a County Clerk to criminal liability by virtue of the acts of his or her subordinates is not a large concern.

[10]As we recently indicated in *Estate of Carter*, 408 F.3d at 311 n.2:

> Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here. As two recent opinions indicate, both the two-step approach and the three-step approach can be said to capture the holding of *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *Compare Dunigan v. Noble,* 390 F.3d 486, 491 n. 6 (6th Cir.2004) (two-step approach), *with Sample v. Bailey,* 2005 Fed.App. 0209P, 409 F.3d 689, 696 n. 3 (6th Cir.2005) (three-step approach). The third step is "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 905 (6th Cir.2004) (internal quotation omitted). In cases subsequent to *Saucier* the Supreme Court has not formally broken up the two steps prescribed by *Saucier* into three steps, *see, e.g., Brosseau v. Haugen,* --- U.S. ----, 125 S.Ct. 596, 596, 160 L.Ed.2d 583 (2004); *Groh v. Ramirez,* 540 U.S. 551, 563, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), but the three-step approach may in some cases increase the clarity of the proper analysis. In many factual contexts, however, including this one, the fact that a right is "clearly established" sufficiently implies that its violation is objectively unreasonable. *Cf. Champion,* 380 F.3d at 905.

Like *Estate of Carter*, this case is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable. Thus, in order to avoid duplicative analysis, we choose to collapse the second and third prongs discussed in some of our cases into one prong in this case.

C.      Qualified Immunity

Defendant Hollan argues that she deserves qualified immunity because the law concerning patronage dismissals of deputy county clerks was not clearly established, particularly in light of *Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997). *Cope* is, at this point, of limited value as precedent. In *Cope*, this court assumed that a constitutional violation was present, but granted qualified immunity on the basis that the law was not clearly established in 1997.[11]   *Id.* at 461.  In general, it is of little consequence that this court held that a right was not clearly established at an earlier date. *See Hall v. Tollett*, 128 F.3d 418, 429-30 (6th Cir. 1996).  A right not clearly established in 1994 (the court was dealing with a failure to renew an appointment that occurred in January of 1994, *see Cope*, 128 F.3d at 456), may become clearly established in the intervening time before 2002.  Thus, relying almost exclusively on a case that held that a right was not clearly established many years ago is not conclusive or persuasive.

Under the doctrine of qualified immunity, "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The purpose of the clearly established prong of the qualified immunity analysis is to insure that the officials were on notice that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[T]he salient question that the Court of Appeals ought to have asked is whether the state of the law in 1995 gave respondents fair warning that their alleged treatment of *Hope* was unconstitutional.").  Although notice to the official is critical, qualified immunity is an objective rather than a subjective inquiry. *Cope*, 128 F.3d at 458 ("It is important to understand that Mrs. Heltsley's own subjective views on the legality of her staffing decisions are essentially irrelevant. Whatever she may actually have thought about the constitutional propriety of what she was doing, the pertinent test is an objective one, not subjective." (internal citations and quotation marks omitted)).  Rights at issue must be clearly established, not just in the abstract sense, but in a particularized sense. *See Brosseau v. Hogan*, 125 S.Ct. 596, 599 (2004) (finding that "[t]he present case [was] far from the obvious one where *Graham* and *Garner* alone offer a basis for decision," the court "therefore turn[ed] to ask whether, at the time of Brosseau's actions, it was clearly established in [a] more particularized sense that she was violating Haugen's Fourth Amendment right[s].") (internal quotation marks omitted); *Saucier,* 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (citations omitted); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (citations omitted).  The specific act, however, need not have been held unconstitutional for the right to be clearly established. *See Hope v. Pelzer,* 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."); *Anderson*, 483 U.S. at 640 ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.").

Thus, while it must be clear to the reasonable official that acts would violate the Constitution, it is irrelevant what the individual official actually believed about the legality of his or her action.  In addition, the specific action of the official need not have been found to have been unconstitutional in a prior decision to hold that official liable pursuant to § 1983, but the law must have established with particularity that the conduct complained of violated the Constitution before the official engaged in the unconstitutional act.

---

[11]Defendant's reliance on *Cope* highlights the danger inherent in any court assuming a constitutional violation in order to decide a case on the basis of qualified immunity due to the absence of clearly established law.

In *Hall*, this court relied on *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996) (establishing four categories to attempt to capture the positions that can fall under the *Branti* exception), to hold that the deputy sheriffs' duties did not fit into the *Branti* exception. *Hall*, 128 F.3d at 429-30.  We also held that the sheriff deserved qualified immunity due to the absence of a clearly established rule forbidding the termination of deputy sheriffs for political reasons. *See id.* at 429.  We so held, because in *Coyle v. Gilley*, 957 F.2d 1347 (6th Cir. 1992), we had earlier found that it was not clearly established that deputy sheriffs were protected from patronage dismissals under the state of the law in 1992. *Hall*, 128 F.3d at 430.  We also determined that after our decision in *Coyle*, but before 1994, when the defendant in *Hall* acted, no further relevant cases had been decided. *Id.*  We also noted a split in the circuits. *Id.*  With no decision that patronage dismissals of deputy sheriffs was impermissible between 1992 and 1994, the defendant in *Hall* was entitled to qualified immunity. *Id.*  Here, however, Defendant had not only our earlier decision in *Cope*, which assumed that the dismissal of deputy clerks was unconstitutional, Defendant also had our decisions in *Hall* and in *Heggen* as well as *McCloud*.

In *Heggen*, in January of 2002, we denied qualified immunity to a Kentucky sheriff accused of engaging in patronage dismissals in light of *Hall*. *Hager*, 284 F.3d at 687.  We determined that *Hall* alone was sufficient to make the constitutional right prohibiting patronage dismissals clearly established for Kentucky deputy sheriffs. *Id.*

On March 29, 2002, in *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 369 (6th Cir. 2002), a teacher was demoted and reassigned after she supported a different candidate for school superintendent.  Her duties consisted mainly of "providing direct services to students, and the remainder administering the [Gifted and Talented Program (GTP)]."  She also worked closely with the former superintendent to "build and improve the GTP by creating and implementing several new local programs, obtaining additional grants . . . identifying an increased number of eligible students, . . . [and] conferr[ing] with the State GTP Consultant . . . ." *Id.*  This court determined that a material question of fact existed as to whether the new superintendent had violated her First Amendment rights. *Id.* at 368.

We believe that *Hall, Heggen,* and *McCloud* make the law in this circuit with respect to patronage dismissals of these types of county employees clearly established with the requisite specificity to satisfy the Supreme Court's requirement that the law "clearly establish[] in [a] more particularized sense" that the act was unconstitutional. *Brosseau*, 125 S.Ct. at 599.

The duties of the deputy sheriffs described in *Hall* are little different from the duties of the deputy clerks here.  Deputy sheriffs duties were described in *Heggen* as "including road patrol, serving arrest warrants and civil papers, taking complaints and 'working' auto accidents, . . . transport[ing] prisoners[,] and providing  courtroom security." *Heggen*, 284 F.3d at 679. *Heggen* described all of these duties as "nonpolicymaking duties." *Id.* at 684.  Deputy clerks, whose work is essentially clerical work, also perform nonpolicymaking duties.  Although deputy sheriffs and deputy clerks engage in different tasks, their respective levels of responsibility and the nature of their jobs are not so different as to cause this court to find that the law with respect to deputy sheriffs is clearly established, but that the law with respect to deputy clerks is not clearly established.  In addition, Hager's duties are also best described as nonpolicymaking duties.  It is difficult to understand how a reasonable official could believe that it would be constitutionally permissible to terminate a clerical employee like a deputy clerk through political patronage, when this court has held that it is not constitutionally permissible to terminate a deputy sheriff or a teacher and administrator of a gifted and talented program through political patronage.

Furthermore, were this court to hold that *Hall, Heggen,* and *Hager* did not make the law clearly established for deputy county clerks, we would be ignoring the Supreme Court's rule that "officials can still be on notice that their conduct violates established law even in novel factual

circumstances." *Hope,* 536 U.S. at 741.**12**   Were this court to require position-specific findings before it found that the law was clearly established, we would be, in effect, requiring a previous finding on the constitutionality of patronage dismissals for every government position before holding that the law was clearly established for that position. Such a finding could lead to the result that similarly situated county officials could engage in political patronage dismissals at least once with impunity, unless and until a court ruled on the constitutionality of political patronage for that particular position. Such a result is not warranted by logic or precedent.

Finally, the memo circulated to new executives by the county attorney that specifically warned Defendant against patronage dismissals appears to be relevant to the question of notice in this case. It is, of course, irrelevant what Defendant Hollan believed the state of the law to be; indeed, the record is silent as to whether she believed that she could constitutionally discharge her employees for political reasons. The very fact, though, that the county attorney sent her the memo indicates that she was on notice that patronage dismissals were, in general, prohibited under clearly established law, even if the memo did not go into detail about whether she as County Clerk could engage in patronage dismissals. A reasonable county official, having received that memo, would have been on notice that patronage dismissals were, in general, prohibited.

In sum, by virtue of *McCloud, Heggen,* and *Hager*, Defendant had sufficient notice that patronage dismissals in Kentucky were constitutionally suspect. These cases alone are enough to find that the rule prohibiting patronage dismissals of deputy county clerks was clearly established. The memo from the Boyd County Attorney warning new county executives against patronage dismissals further solidifies our holding that a reasonable official would be on notice that patronage dismissals would violate the constitutional rights of county employees in most circumstances.

In *Cope*, Judge Nelson asked: "Would it have been possible, at the end of 1993, for a reasonable person, newly-elected a Kentucky County Clerk, to believe that the law entitled her to take political compatibility into account in deciding whom to retain as her deputy clerks? The answer, we think, is 'yes.'" *Cope*, 128 F.3d at 460. In view of the cases subsequent to *Cope*, the fact that *Cope* assumed a constitutional violation, and the county attorney's memo, the answer, we think, to that same question, in 2003, was clearly "no." Thus, the district court erred in granting Defendant Hollan qualified immunity for claims brought against her in her individual capacity.

D.      Official Capacity Claims

A suit against a person in his or her official capacity is a suit against the office and not the person. *Pusey v. City of Youngstown*, 11 F.3d 652, 694-95 (6th Cir. 1993). Suits alleging that a city or municipality is liable for a constitutional tort brought pursuant to § 1983 must also allege that the violation resulted from the city's or municipality's official policy or custom. *See id. See also Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978). "In appropriate circumstances, a single act may rise to the level of policy or custom. With regard to policy, a single act can constitute municipal policy 'where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" *Pusey*, 11 F.3d at 659 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

To maintain a suit against Defendant Hollan in her official capacity, Plaintiffs must show that the County Clerk had final authority to establish official policy with respect to the hiring of her deputy clerks. *See, e.g., Pembaur*, 475 U.S. at 483 n.12. The district court relied on an unpublished

---

**12**While we are mindful that the standard at issue is whether a reasonable official would be on notice rather than would a reasonable lawyer be on notice, because the Supreme Court has indicated that novel factual circumstances can still be subject to clearly established law, the Supreme Court seems to assume that the reasonable official is capable of drawing analogies between disparate factual situations.

decision of this court, *Cope v. Heltsley*, No. 98-5253, 1999 WL 232687 (6th Cir. Apr. 16, 1999), and found that Plaintiffs had not offered any evidence that the County Clerk had the authority to establish county policy with respect to the hiring of deputy clerks. In their briefs on appeal, Plaintiffs state that they appeal the district court's grant of summary judgment to Defendant Hollan in her official capacity, but they point to no evidence that the County Clerk had the authority to establish county policy with respect to the hiring of deputy clerks, nor do they direct us to any law, statutory or otherwise, giving that power to the elected County Clerk. After reviewing the record, we can find no evidence or law that would establish that Hollan, as County Clerk, had the power to adopt a policy of refusing to rehire deputy clerks for political or patronage reasons. For these reasons, we find no basis to reverse the District court's grant of summary judgment in favor of Defendant for claims brought against her in her official capacity.

E.      Plaintiff Butler's Claims

Finally, we address the claims of Plaintiff Lynn Butler. Plaintiff Lynn Butler was the former Boyd County Clerk, and, therefore, the holder of a political position. Because hers was a political position, she had no expectation of being retained by Defendant Hollan, who was elected to replace her. It is irrelevant that she had been a deputy clerk when she was appointed to the position of County Clerk after the death of the previous clerk. It is also irrelevant that she did not run for office against Defendant Hollan. Thus, the district court did not err in dismissing her claims.[13]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to Defendant Hollan with respect to the claims of Plaintiff Lynn Butler, **AFFIRM** the district court's judgment with respect to its grant of summary judgment in favor of Defendant Hollan in her official capacity as Boyd County, Kentucky, County Clerk, but we **REVERSE** the district court with respect to its grant of summary judgment on the basis of qualified immunity to Defendant Hollan in her individual capacity for the claims made by the deputy county clerk plaintiffs. We **REMAND** those claims to the district court for further proceedings not inconsistent with this opinion.

---

[13]Further, although Plaintiff Butler joined the deputy clerk Plaintiffs' appeal, Plaintiffs' briefs to this court did not present any argument on behalf of Butler. Thus, we alternatively hold that Butler waived her arguments on appeal. *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). *See also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) ("[Plaintiff's] failure to raise an argument in his appellate brief constitutes a waiver of the argument on appeal.").